UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHELLA WILDE, as Guardian of | ) | |
| TAYLOR BELL, | ) | |
| Plaintiff, | ) | |
| v. | ) | Cause No. 1:15-CV-1051-JMS-TAB |
| NEAL ROSENBERG, JAMES ALOISIO, | ) | |
| CRAIG DENISON, LIEUTENANT DAVID | ) | |
| THOMA, Individually, and as Servants, Agents | ) | |
| of the Noblesville Police Department, THE | ) | |
| CITY OF NOBLESVILLE AND THE | ) | |
| HAMILTON COUNTY SHERIFF | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT, HAMILTON COUNTY SHERIFF'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT**

Defendant, Hamilton County Sheriff ("Sheriff"), by counsel, respectfully submits this

Memorandum of Law in support of his Motion to Dismiss the Third Amended Complaint

("Complaint")[1]:

## I.    INTRODUCTION

Taylor Bell ("Bell"), through his Guardian Shella Wilde, brings claims pursuant to 42

U.S.C. § 1983 and state tort law against the defendants for an incident occurring on July 20,

2013 involving Bell's apparent attempt at "suicide-by-cop."[2]   Bell alleges he was complying

with Noblesville Police Department ("NPD") officers when he was shot by bean bags, tasers, and

ultimately rifles.   Interestingly, the involvement of any Sheriff's deputies was completely

tangential to NPD's encounter with Bell because Sheriff's deputies acted solely to establish an

outside perimeter near Riverview Hospital to assist with public safety, had no pre-shoot

---

[1] Bell initiated this lawsuit as a state law case on February 13, 2014.  On June 22, 2015, sixteen
months after filing his lawsuit, Bell asserted federal claims for the first time.  Significant liability
[2] Not long before NPD's police action shooting, Bell called a private mental/behavioral health
crisis line reporting suicidal ideation and his plan to engage the police in his plan to commit
suicide.

interaction with Bell, and fired no shots.  This non-involvement by Sheriff's deputies is readily apparent from the Complaint.[3]

### A.      Plaintiff's Factual Allegations.

What follows are the "factual allegations" leveled at the Sheriff - submitted verbatim for ease of reference.

1. On July 20, 2013, Bell was a mentally unstable adult that suffered from suicidal tendencies.  (Complaint, ¶ 15).

2. Subsequent to the shooting there was no standard crime scene investigation conducted.  (Complaint, ¶ 44).

3. Subsequent to the shooting NPD and the City engaged the Sheriff to conduct the investigation of the crime scene and the officer involved shooting, instead of utilizing an outside agency/investigator not involved in the incident per standard protocol. (Complaint, ¶ 45).

4. The Sheriff failed to accurately conduct laboratory testing on the bullet shell casings, weapons used in the shooting and other evidence in the matter. (Complaint, ¶ 47).

5. The Sheriff failed to properly investigate the shootings regarding the knowledge of on-scene officers that Bell only possessed a Beretta Air gun. (Complaint, ¶ 48).

6. The Sheriff failed to complete a final comprehensive report or summary regarding its investigation and findings per standard procedure and protocol.  (Complaint, ¶ 49).

7. The NPD and/or Sheriff failed to properly preserve all dash cam footage and officer/dispatch communications for the investigation. (Complaint, ¶ 50).

### B.      Plaintiff's Cause of Action Against the Sheriff.

Despite the absence of any interaction between Sheriff's deputies and Bell and no factual averments claiming that Sheriff's deputies had anything to do with NPD officers using force against Bell, Bell has attempted to implicate the Sheriff's Office in four specious claims arising from averments that all relate to alleged activity by the Sheriff's Office occurring *after* the

---

[3] Plaintiff very liberally makes use of the word "scene" when alleging "officers from ….the Sheriff arrived on scene." (Third Amended Complaint,¶28)

shooting. See 3d Amended Complaint ¶¶47-51 (allegations related to improper investigation and manipulating evidence).  Based on these baseless allegations, Bell's cause of action against the Sheriff includes an entity liability or *Monell* styled claim contending that the Sheriff, as a matter of policy and practice, encouraged misconduct by failing to adequately train, supervise and control his officers (Plaintiff's Third Amended Complaint, Count III**);** a conspiracy claim brought under 42 U.S.C. §1983 (Count IV); a claim  of inadequate training, supervision and discipline for specific policies of the Sheriff (Count IX); and a state law claim of negligence (Count X).

Notwithstanding these theories of liability, there are no factual allegations detailing a plausible claim for relief against the Sheriff. Here, all federal claims levied at any individuals are asserted against NPD officers related to NPD's use of lethal force.  (Complaint, ¶¶ 61-62, ¶¶ 66-67).  Since Sheriff's deputies had no involvement with Bell before the shooting and had no participation in the shooting, Bell fails to allege that any individual Sheriff's deputies caused him to suffer a constitutional deprivation related to his seizure.  Instead, Bell creatively attempts to draw the Sheriff into the fray by alleging that the post shooting affairs of the Sheriff, primarily related to the Sheriff's Department investigation into the shooting, somehow constituted a federal deprivation.  Even if Bell had stated viable theories of liability against the Sheriff, his Complaint fails to contain sufficient factual averments to state a facially valid cause of action by hailing conclusory allegations using boilerplate language that is insufficient under F.R.C.P. 12 and warrants dismissal.

## II.      STANDARD FOR DISMISSAL

### Fed. R. Civ. P. 12(b)(6)

To state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "The 'short and plain statement' must be enough "to give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"  *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007)(quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) and noting that the Supreme Court in *Twombly*, 127 S. Ct. at 1969, retired the common formulation that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). "In addition, a plaintiff can plead himself out of court by alleging facts that show there is no viable claim." *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008), citing *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

For purposes of a motion to dismiss, the court accepts the complaint's factual allegations as true, because a motion to dismiss filed pursuant to Trial Rule 12(b)(6) tests the legal sufficiency of the complaint.  *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d. 672, 671 (7th Cir. 2001).   The court views facts as well as any inferences reasonably drawn in the light most favorable to the non-moving party.  *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991). When dismissing a complaint for failure to state a claim, the court may not look to materials beyond the pleading itself.  *Alioto v. Marshall Field's & Co.,* 77 F3d. 934, 936 (7th Cir. 1996). "[T]he factual allegations in the complaint 'must be enough to raise a right to relief above the speculative level.'"  *Killingsworth*, 507 F.3d at 618 (quoting *Twombly*, 127 S. Ct. at 1965) (other citations omitted).   "Although this does 'not require heightened fact pleading of specifics,' it does require the complaint to contain 'enough facts to state a claim to relief that is plausible on

4

its face.'" *Killingsworth*, 507 F.3d at 618 (quoting *Twombly*, 127 S. Ct. at 1974)(other citations omitted).

"Plaintiffs must do more than plead facts that are consistent with Defendants' liability because that only shows the possibility, not the plausibility, of their entitlement to relief." *Rodriguez v. Cook County Sheriff's Office*, 2009 WL 4673803 *1 (N.D. Ill. 2009).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. In *Iqbal*, the Court further explained the standard for construing the facial validity of a complaint when it reasoned:

> [T]wo working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we *1950 "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556, 127 S.Ct. 1955. … [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.

*Iqbal*, at 1949-50.  While the court must accept only "well-pleaded, non-conclusory factual allegations," legal conclusions and conclusory statements are not accepted as true. *Id.* at 1949. Moreover, unsupported conclusions of fact or mixed fact and law are not admitted.  *Hess v.*

*Petrillo*, 259 F.2d 735 (7th Cir. 1958), *cert. denied*, 359 U.S. 954; *Homan Manufacturing Co. v. Russo*, 233 F.2d 547 (7th Cir. 1956); *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (commenting that deferential standard does not obligate a court to "swallow the plaintiff's invective, hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.").

## III.   ARGUMENT

### A.   Plaintiff's Entity Liability Claim Against the Sheriff Fails to State a Claim for Constitutional Deprivation and Lacks Sufficient Factual Averments to Support a *Monell* Claim.

Bell brings Counts I and II exclusively against the NPD officers for using excessive force under the Fourth Amendment and for failure to intervene.  Count III is entitled "*Monell* Policy Practice and Customs Violation Against Defendants City of Noblesville and Hamilton County Sheriff."  As an initial matter, entity liability or a *Monell* styled theory of recovery is merely an avenue to attempt to attach legal responsibility, it is not, as Count III suggests a violation itself. In other words, Bell must first allege that the Sheriff deprived him of a federally protected right and then state a sufficient factual basis for entity liability under *Monell*.  *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992) (emphasizing the separate character of the inquiry into the question of municipal responsibility and the question whether a constitutional violation occurred); *see also McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Therefore, as an initial matter we must explore whether Bell has alleged an actionable constitutional claims against the Hamilton County Sheriff.  *See Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) (stating ". . .if no constitutional violation occurred in the first place, a *Monell* claim cannot be supported.") *See Sallenger v. City of Springfield, Ill.,* 630 F.3d 499, 504 (7th Cir.2010) ("[A] municipality cannot be liable under *Monell* when there is no

underlying constitutional violation by a municipal employee."); *Contreras v. City of Chicago*, 119 F.3d 1286, 1294 (7th Cir.1997); *Alexander v. City of South Bend*, 433 F.3d 550, 557 (7th Cir. 2006).

Review of the "Factual Allegations Common to All Counts" shows that NPD responded to the 911 dispatch that followed Bell's call to Aspire to report his intentions to commit suicide by cop. (Complaint ¶¶16-25). The Complaint further makes it clear that after NPD officers responded to Bell's location near Riverview Hospital that NPD had exclusive interaction with Bell and ultimately used lethal force to seize Bell. (Complaint ¶¶17-43). Next, the allegations turn to post shooting affairs and Bell complains that there was "no standard crime scene investigation conducted"(Complaint ¶44), however, Bell then contends that subsequent to the shooting NPD engaged the Sheriff to conduct the investigation of the crime scene and officer involved shooting, instead of utilizing an outside agency not involved in the incident. (Complaint ¶45).[4] Next, Bell asserts that the Sheriff, who oversees a county police agency entirely separate and apart from the municipally controlled NPD, failed to properly investigate the shooting and, in so doing, sets forth some alleged deficiencies in that regard (i.e. failing to accurately conduct ballistics testing, failing to complete a comprehensive report/summary findings, and failing to preserve dash cam video). (Complaint ¶¶46-51).

With these "factual allegations" as his backdrop, Bell then charges the Sheriff with what he characterizes as a *Monell* policy, practice, and customs violation. (Count III). However, Bell

---

[4]  It is unclear what Bell means by an outside agency since his Complaint properly alleged that the Noblesville Police Department are controlled by the City of Noblesville and not affiliated with the Hamilton County Sheriff's Department, which is controlled by the elected Sheriff of Hamilton County.  (Complaint ¶¶8-9).

fails to identify the constitutional deprivation allegedly caused by the Sheriff.[5]   Instead, Bell

leaps ahead to bringing boilerplate allegations in the Monell style framework against NPD and

the Sheriff by broadly stating that "the misconduct described in the Third Amended Complaint,

and in this Count, was undertaken pursuant to the policy and practice of the NPD and Sheriff in

that:

   a. As a matter of both policy and practice,  the NPD and the SHERIFF directly
      encourage,  and are thereby the moving force behind, the type of misconduct at
      issue here by  failing to  adequately train, supervise, and control  its officers, such
      that its failure to do so manifests deliberate indifference;
   b. Specifically, as a matter of both policy  and practice,  the NPD and SHERIFF
      facilitate  the type of misconduct  at issue here by  failing to adequately
      investigate,   punish,   and  discipline   prior instances of similar  misconduct;
      thereby  leading  the  NPD  Officers  to believe  their  actions  will  never  be
      scrutinized  and,  in  that  way,  directly  encouraging  future abuses, wrongful
      shootings,  crime scene cover-ups, such as those affecting BELL; specifically, police
      officers who unlawfully seize (shoot) citizens believed to  be  mentally
      unstable/disturbed  without any  lawful purpose can be confident that the CITY will
      not  investigate those  accusations  and  will refuse to recommend  discipline even
      where  the officer  has engaged  in an unreasonable  seizure (shooting) in violation of
      the Fourth Amendment;
   c. Generally, as a matter of widespread practice so prevalent as to compromise
      municipal policy, officers of the NPD the SHERIFF abuse citizens in a manner
      similar to that alleged by BELL in this Complaint,  and this Count, on a frequent
      basis, yet the CITY, the SHERIFF, and the Internal Affairs Division of the NPD,
      make findings of wrongdoing  in a disproportionately small number of cases;
   d. That the CITY policy-makers are aware of, and condone and facilitate by their
      inaction, a "code of silence" within the NPD and SHERIFF offices.  Police  officers
      routinely  fail  to report instances  of police misconduct  and lie to protect each other
      from punishment, and go un-disciplined  for doing so;
   e. The CITY,  NPD and SHERIFF  have failed to act to remedy the patterns  of abuse,
      despite  actual  knowledge  of the same, thereby  causing  the types of injuries
      alleged here;
   f. That the CITY, NPD and SHERIFF acting by and through their agents, have
      knowledge  of, and the relevant policy-makers  have failed to act to remedy, the
      patterns  of  abuse  described  in  the  preceding sub-paragraphs,  despite actual
      knowledge   of the  same, thereby  tacitly  approving  the ratifying  the type of
      misconduct  alleged  here.

(Complaint, ¶ 74).

---

[5] Count III mentions a Fourth Amendment violation against the individual NPD officers but
nowhere else in Count III is another constitutional claim asserted.

At the outset, Bell takes liberties with his allegations- making assertions that he must know to be false and certainly improper under F.R.C.P. 11.[6]   For example, the factual averment that the Sheriff failed to investigate, punish, and discipline prior instances of similar misconduct thereby leading the NPD Officers to believe their actions will never be scrutinized and that such failure somehow lead to NPD's shooting of Bell does not and cannot have evidentiary support or be reasonably based on belief.   Bell has pled that the Sheriff and NPD are two entirely distinct law enforcement agencies and there is no basis to believe the Sheriff has any power, right, duty, or authority over any NPD officer- much less as it would relate to the operations, training, discipline and affairs of the Noblesville officers.   Similarly, Bell makes the unsustainable assertion that City of Noblesville policy-makers condone and facilitate a "code of silence" within the Sheriff's office where police officers routinely lie to protect each other from punishment. The Sheriff submits that Bell's allegations against him are reckless and violate F.R.C.P. 11.

Even if Count III did not violate F.R.C.P. 11, it must be dismissed under *Monell*.   In *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), the Supreme Court held that local governmental agencies may be sued pursuant to 42 U.S.C. § 1983 for maintaining unconstitutional policies that cause injury.   Also, the Supreme Court held that Section 1983 did not authorize imposition of vicarious liability upon a municipal corporation.   Accordingly, to hold a governmental entity liable, a plaintiff must demonstrate that his constitutional rights were deprived by:  (1) an express policy that, when enforced, caused constitutional deprivations; (2) a widespread practice that, although not authorized by written law or express municipal policy, was so permanent and well-settled as to constitute a custom or usage with the final force of law;

---

[6] On June 24, 2015, undersigned counsel sent Plaintiff's counsel a Rule 11 safe harbor communication advising Plaintiff that the Third Amended Complaint raised untenable theories of liability against the Sheriff and should be dismissed.

or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) quoting *Phelan v. Cook County,* 463 F.3d 773, 789 (7th Cir. 2006).

In Count III, Bell asserts that individual named NPD officers engaged in harassing and abusive behavior in violation of his Fourth Amendment rights; a conclusion potentially supported by allegations of unreasonable use of force; yet, no allegations concerning this deprivation are made against employees of the Sheriff. (Complaint, ¶ 71). Bell's factual allegations against the Sheriff concern the Sheriff's investigation following the alleged unreasonable seizure through the utilization of force. However, Bell does not allege he was arrested, incarcerated, or prosecuted as a result of the incident, and it is wholly unclear what constitutional right he contends was violated as a result of an alleged inadequate investigation.[7] Nevertheless, claims of inadequate or incomplete investigation are not actionable. *See e.g. Kompare v. Stein*, 801 F.2d 883, 889-90 (7th Cir. 1986); *Haywood v. Marathon Cnty. Sheriff Dep't*, 2007 WL 5633391 (W.D. Wis. Aug. 3, 2007). It is only "when execution of a governmental policy or custom…inflicts injury that the government is responsible under § 1983." *Monell*, 436 U.S. 658 at 658. Absent an underlying constitutional deprivation by a governmental actor (here one of the Sheriff's deputies), the question of *Monell* liability should not even be considered. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Thus, because the factual allegations leveled against the Sheriff do not show a cognizable constitutional deprivation, no *Monell* claim may be asserted against him and such claim must be dismissed.

---

[7] Discovery has not revealed that any arrest, incarceration, or prosecution of Plaintiff occurred.

Even if Bell had alleged a violation of his constitutional rights at the hands of Sheriff's deputies, the Complaint asserts nothing more than broad conclusions and boilerplate assertions to attempt to construct a *Monell* claim. Plaintiff asserts that the Defendant "failed to adequately train, supervise, and control its officers . . .and adequately investigate, punish and discipline prior instances of misconduct…thereby leading the NPD Officers to believe their actions will never be scrutinized…encouraging future abuses."[8]  (Count III, ¶ 74(a) and (b)).  As the Seventh Circuit has noted, "there are only limited circumstances in which a failure to train will be characterized as a municipal policy under Section 1983." *Robles v. City of Fort Wayne,* 113 F.3d 732, 735 (7th Cir. 1996)(citations and internal quotations omitted). The inadequacy of training may serve as a basis for Section 1983 liability where the failure to train amounts to deliberate indifference to the rights of citizens interacting with officers.  *Id*. Thus, a municipality could be deliberately indifferent and found liable if it failed to train officers concerning clear constitutional duties implicated in *recurrent situations* or if it failed to provide training after learning of *a pattern of constitutional violations* involving police discretion.  *Id.* (emphasis added- internal citations and quotations omitted).

As noted above, *Twombly* and its progeny require that a plaintiff's complaint present facts sufficient to show he or she has a plausible claim for relief.  In this district and its sister district, the Northern District of Indiana, courts have consistently held that *Monell* claims must be based on more than conclusory, formulaic recitations.  There are several recent cases decided in the Northern District Court and the Southern District Court applying such reasoning and

---

[8] It is undisputed that the Sheriff is not the NPD officers' employer, does not exercise control over them, or have the ability to hire, fire, or discipline them.  There are no allegations suggesting this.   In light of this, such boilerplate assertions made against the Sheriff have absolutely no evidentiary support and will not be supported by further investigation and discovery.

dismissing insufficient *Monell* claims.  *See e.g. Pam v. City of Michigan City*, 2012 WL 4060970 (N.D. Ind. 2012)(Lee, J.); *Eckhart v. Bourrell*, 2011 WL 38993 (N.D. Ind., Jan. 4, 2011)(Cherry, J.); *Land v. Wayne County Sheriff's Department*, 2010 WL 2195454 (S.D. Ind., May 29, 2010)(Lawrence, J.); and *Johnson v. Anderson*, 2011 WL 43220 (S.D. Ind., Jan. 3, 2011)(McKinney, J.).   Indeed, in the Seventh Circuit, such reasoning was applied before *Twombly.  See e.g.  Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985).

Moreover, courts in this circuit have specifically applied the plausibility requirement in the context of failure to train or supervise *Monell* styled claims.  In *Hall v. City of Chicago*, 2012 WL 6727511 (N.D. Ill., Dec. 28, 2012), the Illinois Northern District Court granted defendants' motion to dismiss, where plaintiffs failed to plead adequate *Monell* claims, finding that plaintiffs' claims of failure to train, failure to monitor and failure to discipline lacked sufficient allegations in support.   In addressing claims premised on the City of Chicago's alleged deliberate indifference to police officers' seizure of individuals without reasonable suspicion, the court found that plaintiffs failed to plead that the city did not provide adequate training and did not plead that the city received repeated complaints of constitutional violations.  *Id*. at * 8.  It also found that plaintiffs failed to plead any allegations that the city was aware of a pattern of wrongful conduct and declined to take action in response.  *Id*. at * 9.

Also, in *Nevinger v. Town of Goodland, Indiana*, 2011 WL 2694662 (N.D. Ind., July 12, 2011)(Lee, J.), the court confronted a matter where police officers were sued individually for actions associated with an arrest and where the town and the officers in their official capacities were, likewise, sued.  Defendants sought dismissal of the town and the officers.  The Court noted that only a *Monell* styled claim could be brought against these defendants.  *Id.* at * 2.  Before analyzing the complaint, the Court noted it would dismiss the complaint if "it rest[ed] solely on

12

conclusory allegations and fail[ed] to allege any well pleaded facts of an occurrence or policy other than that incident involving the plaintiff." *Id.* at * 3 (citation omitted). The plaintiff contended that he had made adequate allegations of failure to train, failure to discipline, and failure to take adequate precautions in hiring. However, the Court noted that these assertions were merely boilerplate allegations which could not withstand a motion to dismiss. *Id.* at * 4. The Court found dispositive that the plaintiff had failed to set forth a single fact supporting claims of institutional practice. *Id.*

Bell's Count III allegations generally fall into two categories. They are either formulaic recitations of the elements of a *Monell* claim or they are conclusions without any supporting factual allegations. For example, Bell's assertion that "[a]s a matter of both policy and practice, the NPD and the Sheriff directly encourage, and are thereby the moving force behind, the type of misconduct at issue here by failing to adequately train, supervise, and control its officers, such that its failure to do so manifests deliberate indifference" is a formulaic recitation. (Third Amended Complaint, Count III, ¶ 74(a)) Moreover, Bell offers the conclusion that the Sheriff had knowledge of past wrongs including "abuses, wrongful shootings, crime scene cover-ups" *Id.* at, ¶ 74(b) and the possibility of future wrongs based upon common beliefs that their actions will "never be scrutinized." *Id.*, ¶ 74(b).

However, like the plaintiffs in *Hall*, Bell fails to plead any facts demonstrating repeated prior complaints of violations or decisions made by policymakers to take no action in response. Also, like the plaintiff in *Nevinger*, Bell provides no facts demonstrating an institutional practice condoned by the Sheriff's policymakers. He merely presents blank allegations of "prior instances of similar misconduct" *Id.* at ¶ 74(b) and proffers generalities such as the claim that, "[g]enerally, as a matter of widespread practice so prevalent as to compromise municipal policy,

13

officers of the NPD and Sheriff abuse citizens. . ." without any supporting factual contentions. Plaintiff's unwarranted and abrasive contentions go so far as to continue the unsupported allegations by manufacturing claims describing the Sheriff deputies' actions as following a "code of silence."  Even if Plaintiff had alleged one other incident as proof in support of any of the allegations, which he has notably  failed to do, such attempt would still be insufficient as proof of a single incident will not suffice; rather a series of violations must be presented.  *Palmer v. Marion County*, 327 F.3d 588 (7th Cir. 2003).

Like Count III, Count IX must be dismissed as the allegations are similarly conclusory and formulaic. To the extent Plaintiff brings Count IX as a federal claim, it appears to be redundant to Count III.[9]   Further, the Complaint attempts to state specific breaches of policy including encouraging a practice of using excessive/unreasonable force and/or deadly force *Id*. at ¶ 109(a); failing and refusing to train, supervise and/or discipline for unlawful pursuits *Id*. ¶ 109(b); and failing to properly discipline for misconduct in pursuit and shooting *Id*. at  ¶ 109(c). These allegations are unfounded, contain no factual support aside from mentioning the failure to follow an unspecified policy, SO-05-002, which is not even a Sheriff's policy.[10]  Plaintiff fails to state who, what or how the policy was violated by any defendant and instead simply identifies that it pertains to [i]nteractions with [p]ersons [s]uspected of [m]ental [i]llness.  As a result and to the extent that Plaintiff intended Count IX to be a federal claim, the claim must be dismissed.

Accordingly, Plaintiff's claims in Count III and Count IX fail to present facts that provide even a sketch that demonstrates the adoption of such policy or practice, explicitly or implicitly of

---

[9] Count IX proclaims that the Sheriff and City of Noblesville "acted with reckless disregard of the foreseeable, natural consequences of their actions in failing to train, supervise, investigate and discipline its Police Officers pursuant to procedures policy."  (Complaint ¶ 109)
[10] Oddly, Bell claims the Sheriff had a duty to comply with policy SO-5-002. (Complaint ¶106). This is an NPD policy.

deliberate indifference to a pattern of repeated conduct by the Sheriff resulting in constitutional

violations.  Consequently and in the absence of well pleaded allegations, Bell's claims against

the Sheriff should be dismissed.

> **B.      Plaintiff's 42 U.S.C § 1983 Conspiracy Claim Must Fail as No Factual Allegations Support the Claim and Plaintiff Has Failed to Allege a Deprivation of Rights Pursuant to 42 U.S.C. § 1983 or 42 U.S.C. § 1985 .**

In Count IV, Plaintiff alleges conspiracy under 42 U.S.C. § 1983 claiming the Sheriff

performed an improper investigation and complaining of general police misconduct.

**Count IV is set forth below**.

> That the CITY and SHERIFF unlawfully, knowingly and intentionally combine, conspire, confederate,  and agree together with each other and with others whose  names are unknown,  to conduct  and participate, directly and  indirectly, in activities of which  affected Plaintiffs constitutionally  protected  rights through a pattern of police  misconduct and failing  to properly investigate  the shootings and follow proper protocol and procedure, thereby consisting of multiple acts in conspiracy  with  the intent  and means as is incorporated by reference and re-alleged as facts set  forth herein. (Complaint, ¶ 79).

> That each Defendant  met by agreement  in order to commit  said acts in concert  as individual  members of the conspiracy  in  furtherance  of the conduct of the conspiracy. (Complaint, ¶ 80).

> That as a direct and proximate cause of Defendants actions, BELL  has  been damaged. (Complaint, ¶ 81).

Count IV fails to state a claim upon which relief can be granted as no factual allegations

support the claim, as required by *Monell*, and no constitutional rights were denied as addressed

herein.

First, "[t]he purpose of § 1983 is to deter state actors, and  private individuals  in

collaboration with state officials, from using a 'badge of authority' to deprive individuals of

rights guaranteed by the Constitution." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir.1998).  Title

42 U.S.C. § 1983 "does not itself create substantive rights but provides 'a means for vindicating

federal rights conferred elsewhere.' *Perry v. City of Indianapolis*, 2013 WL 1750747, *5 (S.D.

Ind.) quoting *Padula v. Leimbach*, 656 F.3d 595, 600 (7th Cir. 2011).  In any § 1983 action, the first step is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  It is well-settled that "conspiracy is not an independent basis of liability in § 1983 cases."  *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008), citing *Cefalu v. Vill. Of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000); *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982)(stating, "Section 1983 does not, however, punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises.")  .  See Also *Jones v. City of Elkhart*, 2012 WL 5947707, at *15 (N.D. Ind.).

As discussed above, Plaintiff neither alleges nor can he state a claim that any constitutional rights were violated by the Sheriff.  While Plaintiff generically states he was deprived of rights under the Fourth, Fourteenth and Eight Amendments (Complaint ¶ 4), he fails to identify the right(s) and does not aver how these rights were violated by the Sheriff or his deputies.  Accordingly, Plaintiff's §1983 conspiracy claim does not provide a sufficient independent basis for relieve and must be dismissed.

Should the Court find a deprivation of rights was alleged despite the argument above, Section 1983 could provide relief for that deprivation only if Plaintiff demonstrated certain factors.  *Id*.  If a denial of a civil right is properly alleged, the analysis continues to the conspiracy claim.  In *Fries,* the Seventh Circuit stated:

> To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, *Starnes*, 39 F.3d at 1397; and (2) those individual(s) were " 'willful participant[s] in joint activity with the State or its agents.' " *Adickes* [v. S.H. Kress & Co., 398 U.S. at 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (internal quotation marks and citation omitted)].

*Fries*, 146 F.3d at 457 (7th Cir. 1998); *see also Williams v. Seniff,* 342 F.3d 774, 785 (7th Cir. 2003) *(*using standard from *Fries).*

16

Since Plaintiff only asserted a *Monell* style action against the Sheriff, which requires specific allegations of widespread practice or custom involving recurring behavior of alleged wrong, the conspiracy claim must fail.  Similar to Counts III and IX, Plaintiff has again failed to provide any well-pleaded facts of an occurrence or policy and his case centers exclusively on the circumstance involving the Bell shooting.  Instead, Plaintiff merely makes conclusory statements about acts or omission of the Sheriff pertaining to the instant investigation, such as allegations of improper laboratory testing of bullet shells and other investigation activities. (Complaint ¶¶ 47-48) Plaintiff's claim in Count IX should be dismissed accordingly.

Even if the Court might be inclined to consider the factual allegations as being sufficient, a conspiracy claim is often held to a higher standard than other allegations.  *Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976, 986 (N.D. Ill. 2009) *citing to Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir.2009).  A Plaintiff must factually allege or tend to show a meeting of the minds occurred serving as a basis for the conspiracy.  Such allegations require more than "a bare allegation of conspiracy," or "mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her.  *Cooney*, 583 F.3d 967, 971 (affirming dismissal of *pro se* Section 1983 conspiracy claim where complaint was "bereft of any suggestion, beyond a mere conclusion, that the remaining defendants were leagued in a conspiracy with the dismissed defendants" and lacked any "factual allegations [to] tie the defendants to a conspiracy with a state actor").  Instead, "courts require the plaintiff to allege the parties, the general purpose, and the approximate date of the conspiracy." *Loubser v. Thacker,* 440 F.3d 756, 764 (7th Cir. 2006). A plaintiff also must indicate the nature of the alleged conspiratorial agreement to "enable [the defendant] to prepare his defense or for the district court to determine whether the claim was

within the ballpark of possibly valid conspiracy claims." *Walker v. Thompson,* 288 F.3d 1005, 1007–08 (7th Cir.2002).

Furthermore, in *Admundsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000), the Seventh Circuit stated,

> [plaintiff] must satisfy the following: (1) allege the existence of an agreement; (2) if the agreement is not overt, "the alleged acts must be sufficient to raise the inference of mutual understanding" (*i.e.*, the acts performed by the members of a conspiracy "are unlikely to have been undertaken without an agreement"); and (3) a whiff of the alleged conspirators' assent ... must be apparent in the complaint." Indeed, a conspiracy claim cannot survive summary judgment if the allegations "are vague, conclusory and include no overt acts reasonably related to the promotion of the alleged conspiracy.

(citations and internal quotations omitted).

Here, the Complaint does not set forth any factual allegations which show the existence of an agreement or an inference of a mutual understanding, indeed, there is not even a whiff of the Sheriff or NPD's assent to any conspiracy nor is there a factual allegation tending to show the time, place, and manner in which the agreement was made. Bell merely makes the conclusory allegation that a pattern of general police misconduct and improper investigations were a conspired series of events and that each Defendant "met by agreement" to commit the alleged acts. (Third Amended Complaint, ¶ 78, 80). These allegations alone are insufficient to support a claim of civil conspiracy under either Section 1983 and Bell's claims alleging civil conspiracy claims must be dismissed.

## C.   Law Enforcement Immunity and Failure to Serve Proper Tort Claim Notice Preclude State Tort Claims.

Count X is a state law negligence claim. It is unclear if Count IX was intended to be a state law claim.  As stated above, Count IX does not clearly delineate whether it is a federal claim for inadequate training, supervision and discipline against the Sheriff.  Regardless of

whether such claim is brought under federal or state law it should be dismissed- under federal law for the reasons stated above, and dismissed under state law for the following reasons.

The Indiana Tort Claims Act ("ITCA") provides governmental entities and employees various immunities from claims.  In the context of law enforcement claims, immunity is provided for "the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment."  I.C. § 34-13-3-3(8).  The tort of battery has also been found to fall outside of the protection of law enforcement immunity.  Bell does not allege the Sheriff or his deputies falsely arrested him or battered him.   Rather, Bell's state law claims against the Sheriff are associated with law enforcement actions or omissions occurring before and after the incident—the very activities the immunity protects.  Indiana state courts and federal district courts routinely apply this immunity to dismiss such claims. *See e.g. Snider v. Pekny*, 899 F.Supp.2d 798, 818-819 (N.D. Ind. 2012); *City of Anderson v. Weatherford*, 714 N.E.2d 181 (Ind. Ct. App. 1999); *Snyder v. Smith*, 7 F.Supp.3d 842, 875 (S.D. Ind. 2014); *Miller v. City of Anderson,* 777 N.E.2d 1100,1104 (Ind. Ct. App. 2002)(applying immunity to negligence claim).  In light of the immunity, Bell's state law claims must be dismissed.

Also, state law claims must fail as Bell failed to provide a Notice of Tort Claim expressing his intention to file suit of any state claim raised in this action. As required by the Indiana Tort Claims Act ("ITCA"), before suit can be filed for injury to his person or property, the claimant must file a notice of tort claim under Ind. Code § 34-13-3-8.  A tort claim is barred unless the claimant provides notice within 180 days of the loss to the governing body of the political subdivision.  Ind. Code § 34-13-3-8. The purpose of ITCA notice provisions is to inform the governmental entity of the incident or accident so that it may promptly investigate the

19

surrounding circumstances. *City of Indianapolis v. Buschman*, 988 N.E.2d 791, 793 (Ind. 2013). Compliance with the notice provisions is a procedural precedent prior to filing suit, which a plaintiff must prove and which the trial court must determine prior to trial. *Madden v. Erie Ins. Group*, 634 N.E.2d 791, 793 (Ind. Ct. App. 1994).  The notice must include 1) the circumstances which brought about the loss, 2) the extent of the loss, 3) the time and place the loss occurred, 4) the names of all person's involved, 5) the amount of damages sought, 5) and the residence of the person making the claim. Ind. Code § 34-13-3-10.

Technical violations of the statutory requirements will not be fatal if the plaintiff can show "substantial compliance" with the statute. *Id.*  Whether there was substantial compliance is a question of law.  *Daugherty v. Dearborn Cnty.*, 827 N.E.2d 34, 36 (Ind. Ct. App. 2005). Generally, notice of tort claim will be sufficient if it is timely filed, informs the governmental entity of the claimant's intent to pursue the claim, and contains sufficient information to allow the governmental entity to promptly investigate the claim.  *Buschman*, 988 N.E.2d at 794.

Plaintiff did not serve a proper tort claim notice setting forth any allegations regarding the claims of negligence- including claims of inadequate training, supervision or discipline.  For these reasons, the state law claims against the Sheriff must be dismissed.

### IV.    CONCLUSION

Plaintiff has failed to state plausible claims against the moving Defendant.  As a result, each claim asserted against the Sheriff should be dismissed based on the argument contained herein.

Respectfully submitted,

**COOTS, HENKE & WHEELER, P.C.**


  /s/ Matthew L. Hinkle
Matthew L. Hinkle, # 19396-29
Erika N. Sylvester, #30058-64
*Attorneys for Hamilton County Sheriff*

## CERTIFICATE OF SERVICE

I hereby certify that on the **13th day of August, 2015**, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operations of the Court's electronic filing system. Parties may access this filing through the Court's system.

Thomas E. Hastings
Robert B. Turner
**THE HASTINGS LAW FIRM**
thastings@lawindianapolis.com
rbtatty@aol.com
*Attorneys for Plaintiff*

Kirk A. Horn
**MANDEL HORN MCGRATH & REYNOLDS, P.C.**
khorn@mhmrlaw.com
*Attorney for The City of Noblesville, Neal Rosenberg, James Aloisio, Craig Denison, and Lieutenant David Thoma*

Darren J. Murphy
**ASSISTANT CITY OF NOBLESVILLE ATTORNEY**
dmurphy@ori.net
*Attorney for The City of Noblesville, Neal Rosenberg, James Aloisio, Craig Denison, and Lieutenant David Thoma*


  /s/ Matthew L. Hinkle
Matthew L. Hinkle, #19396-29
Erika N. Sylvester, #30058-64

**COOTS, HENKE & WHEELER, P.C.**
255 East Carmel Drive
Carmel, IN 46032
(317) 844-4693 – telephone
(317) 573-5385 – facsimile
Email: mhinkle@chwlaw.com
         esylvester@chwlaw.com