UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHELLA WILDE, as Guardian of ) <br> TAYLOR BELL, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> NEAL ROSENBERG, individually and ) <br> as a servant or agent of the Noblesville Police ) <br> Department, JAMES ALOISIO, individually ) <br> and as a servant or agent of the Noblesville Police ) <br> Department, CRAIG DENISON, individually and ) <br> as a servant or agent of the Noblesville Police ) <br> Department, CITY OF NOBLESVILLE and ) <br> THE HAMILTON COUNTY SHERIFF, ) <br> ) <br> Defendants. ) | Cause No. 1:15-CV-1051-JMS-TAB |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT HAMILTON COUNTY SHERIFF'S MOTION TO DISMISS**

Comes now, Plaintiff, Shella Wilde, as Guardian of Taylor Bell, by counsel, and files her Response in Opposition to Defendant Hamilton County Sheriff's Motion to Dismiss, and in support thereof states as follows:

### I.   INTRODUCTION

Taylor Bell (hereinafter "Bell"), was unjustly targeted as an emotionally disturbed person. Therefore, Defendant's Motion to Dismiss should be denied based upon the following:

1.   That Plaintiff's Complaint meets the requirements of notice pleadings under Federal Rule of Civil Procedure 8.

2.   That Plaintiff's Complaint meets the requirements of case law, specifically <u>Monell v. Department of Soc. Serv</u>., 436 U.S. 658, 694 (1978), regarding Counts III and IX against the

1

Hamilton County Sheriff based upon its policies, procedures and decision making authority.

3. That Plaintiff's Count IV for conspiracy should be upheld because there was a meeting of the minds and overt act in furtherance of the conspiracy, thereby depriving Bell of a constitutional right.

4. That Plaintiff timely filed his Tort Claim Notice and law enforcement immunity does not apply in this matter. Plaintiff Count X for negligence should not be dismissed.

Therefore, Defendant's Motion to Dismiss should be denied. In the alternative, if this Court finds that Plaintiff's Complaint is lacking, the Plaintiff prays for leave to amend his Complaint.

## II.     FACTUAL ALLEGATIONS

On July 20, 2013 Bell was an emotionally disturbed adult who suffered from suicidal tendencies. Bell sought suicidal treatment through the Aspire Crisis Hot Line from counselor Thomas Harris, and advised him that he intended to commit suicide by cop by pointing a gun at police officers so they would shoot him, but that he had no intention of hurting the officers. This is known as "suicide by cop" as referenced in NPD SO-05-002. Plaintiff had already obtained a Beretta Air Gun to carry out his plan.

After the telephone call, Harris reported Bell's intentions to 911 providing that Bell was an emotionally disturbed person considering suicide, and that he had no intention of harming police officers but he intended to point a gun at them so they would shoot him. Harris further requested through 911 that a welfare check be performed on Bell. 911 dispatched NPD officers to Plaintiff's home to perform the welfare check.

Lt. Thoma, a crisis negotiator for Noblesville Police Department ("NPD"), asked to be put on the run to locate and check on Bell. 911 dispatch provided Lt. Thoma with Plaintiff's cell phone number and Lt. Thoma called him from his cell phone and began what would be a nearly 47-minute conversation. Plaintiff was physically located at the old Kahlo parking lot adjacent to Riverview Hospital.

Defendant Officer Aloisio was the first on scene. Defendant Officer Aloisio drew his weapon and ordered Plaintiff to walk towards him. Defendant Aloisio was commanded by Lt. Thoma to disengage because Lt. Thoma was communicating with Bell by cell phone. Other NPD officers arrived directly on the scene and assumed felony stop positions behind their vehicles in front of Bell as Hamilton County Sheriff's deputies were surrounding the area, some hidden behind buildings adjacent to Bell and others performing lock-down of perimeter buildings. Pursuant to Defendant Hamilton County Sheriff's Motion to Dismiss, the officers forming the perimeter were deputy sheriffs working in conjunction with the NPD.

Throughout this time, Bell was holding the Beretta Air Gun by the barrel in his right hand, and his cell phone in his left hand while talking to Lt. Thoma on the cell phone. Late into the conversation Lt. Thoma told Bell to drop the Beretta Air Gun and walk toward him. Bell began to walk toward Lt. Thoma, still holding the gun by the barrel.

As Bell was walking toward Lt. Thoma, he was shot by less lethal bean bag rounds; one round partially hit him and therefore did not cause him to fall. When less lethal ammunition failed, NPD officers fired multiple Tasers and Bell – an emotionally disturbed person – ran away from the officers to the back of the parking lot to escape the attack. Lt. Thoma then gave an order for NPD Officers to "go get him," meaning Bell. Although Defendant Officer Rosenberg was

3

assigned to the perimeter of the parking lot and was positioned at the back perimeter, he joined the pursuit with the other officers. Lt. Thoma joined the pursuit in his police vehicle.

As officers arrived in the back of the parking lot, officers from both the Noblesville Police Department and the Hamilton County Sheriff's Department were converging around Bell in such fashion that officers' expressed fear of cross-fire between themselves. Plaintiff ultimately surrendered to the NPD Officers with his hands up and still holding the Beretta Air Gun by the barrel. Lt. Thoma again ordered Bell to drop the gun. Despite having his hands in the air, Plaintiff was shot again by multiple Tasers. Defendant Officer Rosenberg then shot two bullets, one of which hit Plaintiff in the chest/abdomen with his department issued rifle. Defendant Officers Aloisio and Dennison subsequently fired their weapons shooting Bell, each shooting one bullet. Bell was also shot in the left thigh. Four bullets were ultimately fired at Bell; two by Rosenberg, one by Aloisio and one by Denison. Several officers, other than the shooters, were present from NPD and the Hamilton County Sheriff when the shooting occurred.

Subsequent to the shooting, one of the shooters, Neal Rosenberg, kicked Bell's Beretta Air gun aside and then picked it up.

Subsequent to the shooting, and only minutes following the shooting, the Assistant Chief of NPD assigned the investigation to the Hamilton County Sheriff's Office instead of an outside agency or entity that was not involved in the incident per standard protocols. Hamilton County Sheriff's deputies were at the scene when the shooting occurred and were working with NPD to secure the perimeter around Riverview Hospital and were involved in the convergence surrounding Bell in the back of the parking lot. Even though Hamilton County Sheriff's officers did not fire

4

their weapons or shoot Bell, they were active officers in the crime scene and had knowledge of intricate and intimate details of the shooting.

Subsequent to the shooting the crime scene was tainted by the many individuals who started moving evidence without a plan for the investigation. As a result, evidence was not properly secured, photographed or collected.

Subsequent to the shooting the NPD failed to conduct a proper internal investigation into the actions of the Defendant Officers, Rosenberg, Aloisio, Dennison, and Lt. Thoma per standard protocol and procedure. The Police Action Review Board report specifically states each officer fired one-shot from their rifles, but the ballistics report from Indiana State Police reveals four bullets were fired; two from Rosenburg; one from Aloisio; one from Denison.

The Sheriff and NPD failed to properly investigate the shooting regarding the knowledge of the Defendant Officers Rosenberg, Aloisio, Dennison, and Lt. Thoma regarding the fact that Bell only possessed a Beretta Air gun, and whether said officers knew of this fact, and still fired deadly weapons at Bell.

The Sheriff failed to properly investigate the shooting when investigators failed to question any of the officers or deputies on scene about the Beretta Air Gun.

The Sheriff further failed to investigate the absence or deletion of dash cam video footage, secure dash cameras, question the lack of audio from radio traffic or belt-mic packs, and/or question the removal of video cards from the shooters police vehicles by NPD.

The Sheriff failed to complete a final comprehensive report or summary regarding its investigation and findings per standard procedures and protocols.

The Sheriff failed to update case notes or provide any communication to any of the agencies expected to review its findings that the Indiana State Police ballistics report revealed more than three bullets were fired.

### III.     STANDARD OF REVIEW

A Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the Complaint, ***not the merits of the case***.   See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990) (emphasis added).  To survive a 12(b)(6) Motion to Dismiss, the Complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the Defendant is given "fair notice of the way the … claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).   Second, the factual allegations in the Complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the Complaint are true.   E.E.O.C. v. Concentra Health Servs., Inc. 496 F.3d 773, 776 (7th Cir. 2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the Complaint.  Twombly, 550 U.S. at 563.   The Court construes the "complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiffs' favor . . . in order to determine 'whether they *plausibly* give rise to an entitlement of relief.'"   Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) (emphasis added).  As the Supreme Court has made clear, "plausible" does not mean "probable." Id. at 1949; Twombly, 550 U.S. at 570.  The Court accepts as true all of the well-pleaded facts alleged by the Plaintiff and all reasonable inferences that can be drawn there from.  See Barnes v. Briley, 420 F.3d 673, 677 (7th Cir. 2005).  It appears that Defendants try to suggest to this Court

6

that Plaintiff be required to plead his claims with a greater factual particularity than the traditional "notice pleading" standard of Federal Rule of Civil Procedure 8 requires; however, the 7th Circuit has not imposed a higher standard and the common notice pleading requirement under the Federal Rules is observed. Finally, the Court may not consider any material beyond the pleadings in ruling on a motion to dismiss under Rule 12(b)(6). See Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).

### IV. ARGUMENT

#### A. *Plaintiff's § 1983 Claims Alleged In Counts III and IX Are Valid Monell Claims Against The Hamilton County Sheriff*

Plaintiff, Shella Wilde, as Guardian of Taylor Bell, asserts three (3) claims under 42 U.S.C. § 1983 against the Hamilton County Sheriff: (1) Monell Policy Practice and Customs Violation against Defendants City of Noblesville and Hamilton County Sheriff (Count III); (2) Conspiracy (Count IV); and (3) Inadequate training, supervision, and discipline against the City of Noblesville and the Hamilton County Sheriff (Count IX). Generally, 42 U.S.C. § 1983, provides that:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage or any State or Territory of the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action in law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

The precursor to 42 U.S.C. § 1983 is § 1 of the Civility Act of 1871, which was a congressional enactment responding "to the wide-spread deprivations of civil rights in the

Southern States and the inability or unwillingness of authorities in those States to protect rights or punish wrongdoers." Severson v. Brd. Of Trustees of Purdue Univ., 777 N.E.2d 1181, 1188 (Ind.Ct.App. 2002) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989)). The legislative history of the word "person" in § 1983 indicates Congress intended to subject "state officers" to suit but no "States of the Union." Id. Both a municipality and a municipal official sued in his official capacity are "persons" amenable to suit under § 1983 for monetary and injunctive relief. Id.; Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690 (1978).

The purpose of 42 U.S.C. § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights. See Wyatt v. Cole, 504 U.S. 158, 161 (1992); Fries v. Helsper, 146 F.3d 452, 457 (7th Cir. 1998). 42 U.S.C. § 1983 does not itself create substantive rights but provides a means for vindicating federal rights conferred elsewhere. Perry v. City of Indianapolis, 2013 WL 1750747, *5 (S.D. Ind. 2013). To state a claim under § 1983, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law. Id.

As it is well settled law, Plaintiff recognizes that a municipality is not liable under § 1983 unless the constitutional violations at issue are caused by a municipal policy or custom. See Monell v. Department of Soc. Serv., 436 U.S. 658, 694 (1978); Thomas v. Cook County Sheriff's Dep't, 604 F.3d 293, 306 (7th Cir. 2010) (holding that Monell recognized that the premise behind a § 1983 action against a government body is the allegation that official policy is responsible for the deprivation of rights)[i] The governmental entity's policy must cause the constitutional

---

[i] A de facto policy or custom may be inferred where widespread unconstitutional practices are allowed to persist, or where the municipality and its policymaking officials are deliberately indifferent to a known or obvious risk of

deprivation, and such supplies the 'color of law' requirement for § 1983. Gibson v. City of Chicago, 910 F.2d 1510, 1519-20 (7th Cir. 1990). More specifically, to prevail on a § 1983 claim against a municipality such as the Hamilton County Sheriff, Plaintiff must prove: (1) a violation of his constitutional rights; (2) that the injury and violation of rights was directly caused by the Hamilton County Sheriff's own action or inaction (policy, widespread custom, or deliberate act of a decision-maker with final policymaking authority) that carried the requisite degree of fault; and (3) proximately caused plaintiff's injuries. Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403-05 (1997); Ovadal v. City of Madison, 416 F.3d 531, 535 (7th Cir. 2005).

To sufficiently, and successfully, state a claim for Monell liability in a Complaint, the Complaint only has to allege that the customs, policies and practices of the municipality caused Plaintiffs' harm and that the municipality facilitated the constitutional wrongs. Monell, 436 U.S. at 691. This is a notice pleading, and does not have to have specific facts pled. There only need be enough facts to put the Defendants on notice of the claims Plaintiff is asserting against the Defendants. Latuszkin v. City of Chicago, 250 F.3d 502, 505 (7th Cir. 2001) (stating that "at the pleading stage, the court must assume [the plaintiff] can prove his allegations"). The Complaint must be read in a light most favorable to Plaintiff. *Id.* On a Motion to Dismiss for failure to properly assert a Monell claim, the ***merits of the case are not up to determination***, only the sufficiency of the Complaint. See Id.

---

constitutional violations. City of Canton v. Harris, 489 U.S. 378, 388-89, 390 n. 10 (1989); City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)(sufficient to allege "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law."); Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) (Monell policy or custom requirement is satisfied where "a local government is faced with a pattern of misconduct and does nothing).

In the present matter, Plaintiff's complaint contains the required sufficient "short and plain statement" that the Hamilton County Sheriff's official policy or custom caused and/or assisted in the facilitation of Plaintiff's constitutional rights being violated causing Plaintiff's injury. When read in light most favorable to Plaintiff, the facts alleged adequately state a cause of action for § 1983 liability. Plaintiff has met the pleading standard for his claims under 42 U.S.C. § 1983 regarding Counts III, IV, and IX.

### B. *Plaintiff's Counts III and IX adequately set forth Monell claims against the Hamilton County Sheriff for its practices, policies and customs.*

As stated above, to prevail on a § 1983 claim against a municipality such as the Hamilton County Sheriff, Plaintiff must prove: (1) a violation of his constitutional rights; (3) the that injury and violation of rights was directly caused by the Hamilton County Sheriff's own action or inaction (policy, widespread custom, or deliberate act of a decision-maker with final policymaking authority) that carried the requisite degree of fault; and (3) proximately caused plaintiff's injuries. Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403-05 (1997); Ovadal v. City of Madison, 416 F.3d 531, 535 (7th Cir. 2005).

  1. Hamilton County Sheriff's actions, and inactions, violated Plaintiff's constitutional rights as alleged in Counts III and IX

The Hamilton County Sheriff continued to deprive Bell of his right to a fair investigation of the shooting, by failing to properly investigate the scene of the crime to assumedly protect the NPD and Hamilton County Sheriff from any allegations of a wrongful shooting. Since the Hamilton County Sheriff had officers at the scene of the shooting, per protocol and procedure, it should have declined to be the lead investigation unit regarding the shooting and crime scene. An outside agency should have been utilized that had no involvement in the shooting. The Hamilton

County Sheriff further failed to question the shooters or any officer on the scene about the Beretta Air Gun, preserve dash board cameras, make inquiry into missing dash board audio and the lack of audio from belt-mic packs or radio traffic, and permitted NPD to move forward with the Police Action Review board without all evidence, i.e., ballistic evidence that revealed the shooter's statements that they each fired one bullet was inconsistent with the findings from the Indiana State Police, and furthermore, insist that in conjunction with the outside agency investigation that a proper and thorough Internal Investigation be conducted within NPD.  The actions, inactions and failures of the Hamilton County Sheriff were part of a widespread pattern or policy that directly contributed to specific violations of Bells' constitutional rights to be free from seizure.  *See* Count III and IX of Plaintiff's Complaint, and factual paragraphs 14 - 56; Eckert v. City of Chicago, 2009 WL 1409707 (N.D. Ill. May 20, 2009) (*citing* City of Canton, Ohio v. Harris, 109 S.Ct. 1197 (1989)).

Plaintiff is aware that she has not alleged any other person who was a victim of the Hamilton County Sheriff's alleged unconstitutional policies similar to this situation, however, discovery in this matter is still ongoing and Plaintiff requested additional time to conduct the depositions of police officers prior to responding to the Motion to Dismiss, but such request was denied by this Court and objected to by Defendant Hamilton County Sheriff.  Nonetheless, Plaintiff maintains that the practices of the Hamilton County Sheriff constitute an ongoing custom, policy, or practice that harms the Hamilton County Sheriff's citizens in which it is there to protect. *See* Plaintiff's Complaint Counts III, IV, and IX.  Through future testimony, experts, and discovery regarding the Hamilton County Sheriff's policies, written and silent, Plaintiff will be able to prove her claims regarding the policies, customs and practices of the Hamilton County

Sheriff and that such policies have a direct causal connection to the deprivation of Plaintiff's constitutional rights, and the wrongful shooting of Bell.  See Obrycka v. City of Chicago, Case No. 07 C 2372, 2013 U.S. Dist. LEXIS 179990   (N.D. Ill., Dec. 20, 2012) (testimony and evidence that a "code of silence" exists within the Chicago Police Department whereby officers conceal each other's misconduct in contravention of their sworn duties).   Such an assertion is sufficient to state a proper Monell claim.   See id.

Therefore, Plaintiff has met his pleading standard and the Court should allow his claims to move forward.

        2.    Plaintiff's Complaint is Factually Sufficient and not Conclusory or Boilerplate

Defendants argue that Plaintiff's Complaint is not sufficient under a standard set forth in the case law, regarding supporting facts to the allegations.  More specifically, Defendant Hamilton County Sheriff asserts that Plaintiff's allegations are conclusory/boilerplate language.  See Doc. 14; *see also* Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).   Generally, such a determination is to be made on summary judgment and not a Motion To Dismiss, because some arguments are better suited for motion for summary judgment, not a motion to dismiss.   See Sivard v. Pulaski County, 17 F.3d 185, 188 (7th Cir. 1994); Frieri v. City of Chicago, 127 F.Supp.2d 992, 995 (N.D. Ill. 2001) (observing that McCormick's holding that "boilerplate allegations' are sufficient to plead municipal liability under § 1983 clarifies confusion created, in part, by Sivard).

However, in making this challenge, Defendants have appeared to ignore the Paragraph Nos. 14 - 56 of Plaintiff's Complaint stating the facts of this matter, which are read in conjunction, and

incorporated within, each allegation set forth in Plaintiff's Complaint. Plaintiff's Paragraph Nos. 14 - 56, set forth sufficient facts to, "state a claim for relief that is plausible on its face." Id. at 1949.

In the case of Ashcroft, it recognized that the Federal Rules of Civil Procedure do not require a Plaintiff to plead "detailed factual allegations". Id. at 1949 (*citing* Twombly, 127 S. Ct. at 1955). Rather, Plaintiffs were charged with pleading, "factual content that allows a court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." Id. Application of Ashcroft has been varied as the Supreme Court noted that context is important and that courts must, 'draw on [their] judicial experience and common sense." Id. at 1950. Ultimately, Ashcroft creates a two (2) prong approach. Id. The first prong recognizes that legal conclusions can provide a framework for a Complaint; however, those legal conclusions must be supported by factual allegations. Id. The second prong recognizes that when, "there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id.

Applying the first of the two (2) pronged approach under Ashcroft, and considering Paragraph Nos. 14 - 56 of Plaintiff's Complaint as incorporated into each Count/allegation, Plaintiff has alleged that the Hamilton County Sheriff was the investigator into the shooting of Bell, and that the Hamilton County Sheriffs assigned to the investigation were officers acting under the color of the law. Further, certain unidentified Hamilton County Sheriff personnel were at the scene when Bell was shot, and were involved in the apprehension of Bell even though they did not directly shoot Bell. Further, Plaintiff's Complaint alleges that the patterns and policies of the

Hamilton County Sheriff, through their actions and inactions, directly led to a deprivation of Bell's civil rights (unlawful seizure).   See arguments *supra*.

Regarding the first prong, the facts state that the Hamilton County Sheriff was working in conjunction with the NPD to secure the scene and assist in Bell's apprehension.  The Hamilton County Sheriff admits in its Motion to Dismiss, that certain, unidentified deputy sheriffs were at the scene securing a perimeter prior to Bell being shot.  The deputy sheriffs were arguably involved in the communications and orders utilized in the apprehension and ultimate the shooting of Bell, even if they were not the individuals that pulled the trigger.

Further, subsequent to the shooting, the Hamilton County Sheriff broke protocol and procedure in agreeing to investigate the shooting when it was directly involved in the scene of the crime.   The Hamilton County Sheriff also failed to properly investigate the scene of the shooting, make a full report, and question officers regarding their knowledge of the how the shooting occurred.  *See* Plaintiff's Complaint, in its entirety.

These factual allegations support the legal allegations as asserted by Shella Wilde, as Guardian of Taylor Bell.

Applying the second prong of Ashcroft, this Court must draw on its "judicial experience and common sense," and assume the veracity of Plaintiff's allegations.  In consideration of the factual allegations, this Court should find it plausible that an allegedly defenseless, emotionally disturbed individual was shot multiple times by Taser guns and deadly weapons, and almost died; and that Bell has suffered the violations outlined and alleged throughout Plaintiff's Complaint and this Brief.

14

Having satisfied the pleading standard set forth in Ashcroft, and having shown a causal connection between the pattern and policy of the Hamilton County Sheriff, the deprivation of Bell's constitutional rights, the plausibility of and the Plaintiff's allegations; the Defendant Hamilton County Sheriff's Motion To Dismiss should be denied. In the alternative, should this Court find that Plaintiff's Complaint is lacking, the Plaintiff prays for leave to amend his Complaint

### C. *Plaintiff's Count IV for Conspiracy under 42 U.S.C. § 1983 should be Upheld against the Hamilton County Sheriff*

Civil conspiracy is defined as a combination of two or more persons, by concerted action, to accomplish an unlawful purpose, or to accomplish some purpose, not in itself unlawful but through unlawful means. See Fries v. Helsper, 146 F.3d 452, 457 (7th Cir. 1998). The Fries court went on to state:

> To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, Starnes, 39 F.3d at 1397; and (2) those individual(s) were "willful participants[s] in joint activity with the State or its agents." Adickes [v. S.H. Kress & Co., 398 U.S. at 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)(internal quotations marks and citations omitted)].

Fries, 146 F.3d at 457 (7th Cir. 1998).

In the present matter there was a "meeting of the minds" of the NPD and the Hamilton County Sheriff to serve as the basis for Plaintiff's claims regarding conspiracy. The meeting of the minds occurred within minutes of the shooting when the Assistant Chief of NPD called and appointed the Hamilton County Sheriff's Department as the investigator of the shooting, while unidentified deputy sheriffs were still at the scene of the shooting. This action was against

standard, state and national protocols and procedures since the Hamilton County Sheriff was at the scene of the shooting when it occurred, and an active police entity in the crime scene process.

Further, during the subsequent investigation, the Hamilton County Sheriff failed to conduct a proper investigation. It failed to preserve the crime scene, failed to properly collect and photograph evidence, failed to properly investigate the shooting when it failed to question any of the officers on scene about the Beretta Air Gun, failed to investigate the absence or deletion of dash cam footage, failed to complete a comprehensive report or summary regarding the investigation, failed to change its notes regarding the number of bullets fired after receiving the Indiana State Police ballistics report that directly refuted the testimony of the shooters, failed to question the lack of audio from belt mic packs, and failed to question the removal of video cards from the shooters police vehicles.

In viewing the totality of Hamilton County Sheriff's actions and inactions it arguably shows a "meeting of the minds" and conspiracy between the NPD and the Hamilton County Sheriff to cover up the true circumstances surrounding the shooting of Plaintiff Taylor Bell. The conspiracy deprived Plaintiff of his right to be free from seizure.

Therefore, Plaintiff's claims for conspiracy under Count IV should be upheld to move forward as a matter of law.

        **D.**    ***Plaintiff timely served its Tort Claim Notice and As Such Plaintiff's Claim for Negligence Should Not Be Dismissed.***

Defendant contends that Plaintiff never filed a timely Tort Claim Notice. However, such assertion is false. See attached Exhibit "A". Plaintiff filed her Tort Claim Notice on November 7, 2013 and served it upon the Hamilton County Sheriff Department, along with seven (7) other

entities. Such notice substantially complied with the Indiana Tort Claim Notice requirements under Ind. Code § 34-13-3-8.

Pursuant to Indiana case law, substantial compliance with the statutory notice requirements is sufficient when the purpose of the notice requirement is satisfied. Schoettmer v. Wright, 992 N.E.2d 702, 707 (Ind. 2013). The purpose of the notice statute includes informing the officials of the political subdivision with reasonable certainty of the accident and surrounding circumstances so that the political subdivision may investigate, determine its possible liability, and prepare a defense to the claim. Id. What constitutes such compliance is a fact sensitive determination and a question of law. Id. The crucial question is whether the notice supplied by the claimant of his intent to take legal action contains sufficient information for the political subdivision to ascertain the full nature of the claim against it so that it can determine its liability and prepare a defense. Id.

In the present matter, Plaintiff's Tort Claim Notice set forth the relevant facts in the matter that counsel was investigating the claim regarding all allegations, but lacked the police report, sheriff's report, and other information at the time because the Plaintiff was not in possession of the same. The Tort Claim Notice put the entities on notice of a potential claim against them as required under Ind. Code § 34-13-3-8, enough to allow them to investigate the facts surrounding a claim so that it may determine its liability and prepare a defense. Snyder v. Town of Yorktown, 20 N.E.3d 545 (Ind. Ct. App. 2014); Schoettmer v. Wright, 992 N.E.2d 702 (Ind. 2013). Such is all that is required pursuant to Indiana case law.

Therefore, Plaintiff's Tort Claim Notice was substantially compliant with the Indiana Tort Claims notice requirements and Count X of Plaintiff's Complaint should not be dismissed.

### *E.  Hamilton County Sheriff is not Immune under The Indiana Tort Claims Act*

Defendant contends that it is immune from liability for negligence under the Indiana Tort Claims Act Ind. Code § 34-13-3-3(8).   The language of the Indiana Tort Claims Act (hereinafter "ITCA"), provides in relevant part:

> "a governmental entity of an employee acting within the scope of the employee's employment is not liable if a loss results from the following:
>  . . .
>
> (8) The adoption and *enforcement of* or failure to adopt or enforce a *law* (including rules and regulations), unless the act of the enforcement constitutes false arrest or false imprisonment."

Ind. Code § 34-13-3-3(8) (emphasis added).

In the present matter, the Hamilton County Sheriff was involved in the apprehension of Bell and the investigation thereafter.   The Hamilton County Sheriff failed to use reasonable care in its actions to protect Plaintiff before the shooting, notwithstanding their knowledge that he did not possess a deadly weapon; or after the shooting, in failing to properly investigate the shooting pursuant to protocol and procedure.   Law enforcement immunity under Section 3(8) of the ITCA does not grant immunity to government agencies or employees from liability for the breach of the duty of reasonable care, this would extend to the Hamilton County Sheriff's negligent investigation.   See Patrick v. Miresso, 848 N.E.2d 1083 (Ind. 2006); Quakenbush v. Lackey, 622 N.E.2d 1284 (Ind. 1993)(having taken a duty to respond to an investigation or scene must use reasonable care).

Therefore, the Hamilton County Sheriff is not immune under the ITCA regarding Plaintiff's Count X for negligence.   Plaintiff's Count X should not be dismissed.

### V.  **CONCLUSION**

WHEREFORE, Plaintiff, Shella Wilde, as Guardian of Taylor Bell, by and through counsel, respectfully requests this Court deny Defendant Hamilton County Sheriff's Motion To Dismiss Plaintiff's Complaint in its entirety; or in the alternative, should this Court find that Plaintiff's Complaint is lacking, the Plaintiff prays for leave to amend his Complaint, and for all other just and proper relief in the premises.

Respectfully Submitted,

HASTINGS LAW FIRM

*/s/ Thomas Hastings*
Thomas Hastings (#8334-80)
The Hastings Law Firm
323 North Delaware Street
Indianapolis, IN   46204
Telephone:   317.686.1000

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served electronically upon the following counsel of record this 7th day of October, 2015:

Kirk A. Horn
Mandel & Horn, PC
704 Adams Street, Suite F
Carmel, IN 46032
khorn@mhmrlaw.com


Matthew L. Hinkle
Erika Sylvester
Coots Henke & Wheeler
255 East Carmel Drive
Carmel, IN 46032
mhinklle@chwlaw.com
esylvester@chwlaw.com

Darren Murphy  
HOWARD & ASSOCIATES  
694 Logan St.  
Noblesville, IN 46060  
dmurphy@ori.net  

                                                /s/*Thomas E. Hastings*