UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHELLA WILDE, as Guardian of ) <br> TAYLOR BELL, ) <br>   ) <br> Plaintiff, ) <br> v. ) <br>   ) <br> NEAL ROSENBERG, JAMES ALOISIO, ) <br> CRAIG DENISON, LIEUTENANT DAVID ) <br> THOMA, Individually, and as Servants, Agents ) <br> of the Noblesville Police Department, THE ) <br> CITY OF NOBLESVILLE AND THE ) <br> HAMILTON COUNTY SHERIFF, ) <br>   ) <br> Defendants. ) | Cause No. 1:15-CV-1051-JMS-TAB |

**DEFENDANT HAMILTON COUNTY SHERIFF'S REPLY IN SUPPORT OF THE SHERIFF'S MOTION TO DISMISS**

Defendant, Hamilton County Sheriff ("Sheriff"), by counsel, respectfully submits it's Reply to Plaintiff's Response in Opposition to Hamilton County Sheriff's Motion to Dismiss.

### I.   INTRODUCTION

Procedurally, after the Sheriff filed his Motion to Dismiss [Docs. 13-14], Plaintiff sought an extension of time [Doc. 16] to respond so that he could complete depositions of officers and investigators to attempt to gather facts to support his claims against the Sheriff.[1] In response, the Court granted the Plaintiff's request, in part, but limited the extension to thirty days reasoning that the desire to depose additional Defendants prior to responding to the Motion to Dismiss was unwarranted and cautioned Plaintiff against a "file first ask questions later" strategy in conflict with Fed R. Civ. P. 11. [Doc. 17]   Plaintiff's Response includes a lengthy recitation of "facts"

---

[1] Plaintiff took three depositions and served multiple sets of discovery on the Sheriff and NPD prior to the filing of his Third Amended Complaint.

along with fact based assertions within his argument, of which some were not pled in the Third Amended Complaint ("Complaint") and cannot be reasonably inferred from it.[2]  Thus, a Motion to Strike is filed in conjunction with this Reply.  Notwithstanding Plaintiff's attempt to use his Response improperly to reframe his Complaint, Plaintiff's response fails to save his claims from dismissal.

In response to the Sheriff's Motion to Dismiss the claims against the Sheriff for matters occurring *after* NPD officers shot Plaintiff – a use of force in which Sheriff's deputies had no involvement,[3] Plaintiff's Response attempts to characterize the *Monell* styled allegations as violating Plaintiff's "right to a fair investigation of the shooting."  (Doc. 23, Response p.10). The Sheriff contends that the Complaint fails to state a claim upon which entity or *Monell* liability can be imposed because Plaintiff fails to identify the constitutional right that was allegedly deprived by the acts or omissions of the Sheriff (or his deputies) - either at the scene or during the post shooting investigation.[4]  Plaintiff's Response fails to articulate how the supposed right to a fair investigation is supported by the Constitution.  Even if Plaintiff could properly identify a constitutional right that was infringed by the Sheriff's investigation of NPD's use of

---

[2]Plaintiff's Response attempts to repurpose the Complaint against the Sheriff. The Response takes significant liberties with not only the allegations but the evidence.  For purposes of Rule 12 motion, only the allegations matter, yet, it is troubling that Plaintiff is trying to reframe the allegations via his Response when it defies not only the allegations but information available in discovery.  For example, there is no allegation or any evidence that Sheriff's deputies converged on Bell in effort to seize him. (See Doc. 23, p.4 )   Similarly, there is no evidence that any Sheriff's deputy destroyed evidence yet Plaintiff goes so far as to allege the intentional manipulation and destruction of evidence. (Complaint ¶51)

[3] Nowhere in the Third Amended Complaint did Plaintiff identify pre-shooting actions of the Sheriff, however, Plaintiff's Response [Doc. 23] adds statements of fact unsupported by the Complaint (i.e. officers from the Sheriff's Department converged around Bell).

[4] As will be discussed more fully below, Plaintiff's Response fails to address this aspect of the Sheriff's motion to dismiss; thus, tacitly conceding that he cannot find any legal support for alleging that the Sheriff caused or contributed to causing him a constitutional deprivation. The omission of an allegation of a constitutional deprivation against the Sheriff's office alone supports dismissal of all federal claims against the Sheriff.

2

force, the Complaint asserts nothing more than broad conclusions and boilerplate assertions warranting dismissal.

Plaintiff's Response also fails to save his state law claims against the Sheriff from dismissal. When considering the Sheriff's Motion to Dismiss and supporting briefs, this Court should dismiss all claims against the Sheriff.

## II. REPLY ARGUMENT

### A. Plaintiff's Complaint Fails to State a Claim for Entity Liability.[5]

As an initial matter, when considering the sufficiency of the *Monell* styled claim, Plaintiff incorrectly contends that this determination is to be made on summary judgment. See *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)(where the Supreme Court established analysis for considering motions to dismiss for lack of sufficiency in pleading *Monell* claims). To bring a claim under § 1983, Plaintiff must show "(1) he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the City; which (3) was the proximate cause of his injury." *Ovadal v. City of Madison, Wisconsin*, 416 F.3d 531, 535 (7th Cir. 2005); *Ineco v. City of Chicago*, 286 F.3d 994, 998 (7th Cir. 2002). The first step in analyzing a section 1983 claim is to identify the specific constitutional injury. *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir.1995), reh'g denied, cert. denied, 517 U.S. 1156.

### 1. Plaintiff Does Not Identify a Federal Right Deprived by the Sheriff.

Presumably since Sheriff's officers were present prior to the shooting only to establish a perimeter and had no involvement with Bell at any time before he was seized by NPD officers,

---

[5] Plaintiff indicates that his *Monell* claims against the Sheriff are presented in Counts III and IX. [Doc 23, p.10].

3

Plaintiff's Complaint failed to allege facts that would serve as the basis for Plaintiff having suffered a constitutional deprivation arising from the acts of Sheriff's officers before, at, or during the use for force that lead to his apprehension. [See Complaint and Doc. 14]. Consequently, the Sheriff moved for dismissal, in part, on grounds that Plaintiff did not allege he was deprived of a right through which he could seek recompense under 42 U.S.C. §1983. Plaintiff did not allege in his factual averments (Complaint ¶¶14-53) that the Sheriff or his officers were involved in the shooting.[6] Yet, Plaintiff attempted to frame the Complaint (Count IX) in a manner that implausibly joins the Sheriff and NPD together through not only a legal fiction,[7] but in ways unsupported by the Complaint's factual averments.

At some level, Plaintiff's Response seems to recognize these deficiencies and, in particular the fallacy of Count IX, by at least narrowing the deprivation alleged against the Sheriff to depriving Bell of the right to a fair investigation. (Doc. 23, pp.10-11) Therefore, even though Plaintiff's Response argues facts not supported by the Complaint, Plaintiff seemingly concedes partial error with how he framed Count IX (relating to use of excessive force) by admitting that the Sheriff's officers did not participate in causing the Fourth Amendment deprivation resulting from the shooting itself, but that it was the deprivation of the "right to a fair investigation."[8] *Id.* Yet, Plaintiff's Response is devoid of any cogent explanation or legal analysis supporting the existence of such a right.

---

[6] Nevertheless, Plaintiff take liberties with unplead facts by arguing that Sheriff's deputies and NPD converged around Bell before the shooting (Doc. 23, p. 4)

[7] See Doc. 14, p9 where the Sheriff explains the implausibility and, indeed, fallacy of Count IX allegations that attempt to associate the Sheriff with NPD including such things as the Sheriff had a duty to train NPD officers. (Count IX, ¶105).

[8] However, Plaintiff's Response still goes beyond the factual allegations of the Complaint to attempt to link the Sheriff to Bell's apprehension. [Doc. 23 pp.12-13] Even had Plaintiff not tacitly conceded that Count IX went too far, it should be noted that Plaintiff did not bring any individual claims against Sheriff's deputies as a result of the shooting so the only federal claims against the Sheriff are under *Monell* and, as stated in his initiating brief, Counts III & IX fail to state a claim for relief for multiple reasons set forth in Doc. 14, pp. 14-15.

Plaintiff seeks redress in this civil action because NPD officers used lethal force to apprehend him and, in his Response, argues that the Sheriff "continued to deprive Bell of his **right to a fair investigation** of the shooting, by failing to properly investigate the scene of the crime to assumedly protect the NPD [and the Sheriff] from any allegations of a wrongful shooting." (Doc. 23, p. 23)(emphasis added).  Yet, Plaintiff does not identify the source of this supposed right or explain how the right to a fair investigation is protected under federal law.  In other words, he has neither identified the right infringed or how he was harmed.  Here, Plaintiff has stated a claim against the City of Noblesville for which relief could be afforded and has not claimed that the actions of the Sheriff caused him to suffer a federal deprivation or unfairly denied him access to have his federal excessive force and state law battery claims addressed in these civil proceedings against the City or NPD.  In short, Plaintiff has not identified a federal right that was deprived by the Sheriff; hence, Plaintiff's §1983 claims against the Sheriff should be dismissed.

   2.   *Plaintiff's formulaic and conclusory assertions fail to sufficiently plead a Monell styled claim.*

Since Plaintiff has not alleged individual liability against Sheriff's officers, all theories of liability under §1983 are based on *Monell* and the sum of the allegations against the Sheriff are formulaic and conclusory in nature and without sufficient factual averment to support a claim for entity liability.  Plaintiff erroneously argues that based on notice pleading standards he met the requirements for a *Monell* styled claim because the Complaint contains a "short and plain statement" that the "Hamilton County Sheriff's official policy or custom caused and/or assisted in the facilitation of Plaintiff's constitutional rights being violated causing Plaintiff's injury." [Doc. 23, p. 10]  Although federal complaints fall within notice pleading standards and require only the stating of "the bare minimum facts necessary to put the defendant on notice of the claim

so that he can file an answer," *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir. 2002), "a complaint must at least 'include the operative facts upon which a plaintiff bases his claim.' " *Kyle v. Morton High School,* 144 F.3d 448, 455 (7th Cir. 1998) *(quoting Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir. 1992)).

Here, Plaintiff made a number of assertions concerning the Sheriff's investigation such as absence of a "standard crime scene investigation," inaccurate "laboratory testing on bullet shell casings," failure to "complete a final comprehensive report," and failure to "properly preserve" evidence. (Complaint ¶¶ 44-50)[9]  Then, in Count III, which Plaintiff entitled "*Monell* Policy Practice and Customs Violation," he broadly alleges that the misconduct described in the Complaint was "undertaken pursuant to the policy and practice of the NPD and Sheriff" that was due to (a) inadequate training and supervision, (b) inadequate investigation and discipline of prior instances of similar misconduct, (c) a widespread practice officers of NPD and the Sheriff abusing citizens in a manner similar to that alleged by Bell, (d) (applies to the City only), (e-f) the City, NPD, and Sheriff having failed to remedy patterns of known abuse.  (Complaint ¶74) Also, in Count IX, Plaintiff contends that the Sheriff had a duty to comply with "all the terms, conditions and policies that establish procedures to identify, investigate, and take appropriate discipline against Police officers of the City." (Complaint ¶108).  Interestingly, the only policy mentioned in the Complaint is an NPD policy (SO-05-002) and not a Sheriff's policy.  Plaintiff further alleges that the Sheriff failed to "train, supervise, investigate and discipline" officers pursuant to policy "specifically, but not limited to" the NPD officers. (Complaint ¶109).

---

[9] In Response to the assertion that the Complaint fails to state a claim for entity liability under *Monell*, Plaintiff suggests that the Sheriff appears to have ignored Complaint Paragraphs 14-56 (Doc. 23, pp.12-13).  To the contrary, the Sheriff's initiating brief actually provided a verbatim recounting of the factual allegations leveled at the Sheriff. [Doc. 14 p. 2]. Then, the Sheriff further addressed other facts (specifically those leading up to arrival of Sheriff's officers at or near the scene [Doc. 14 p.7] and all other averments related to the post shooting investigation.  Id.

While the court must accept only "well-pleaded, non-conclusory factual allegations," legal conclusions and conclusory statements are not accepted as true. *Iqbal*, 129 S.Ct. at 1949. Moreover, unsupported conclusions of fact or mixed fact and law are not admitted. *Hess v. Petrillo*, 259 F.2d 735 (7th Cir. 1958), *cert. denied*, 359 U.S. 954; *Homan Manufacturing Co. v. Russo*, 233 F.2d 547 (7th Cir. 1956); *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (commenting that deferential standard does not obligate a court to "swallow the plaintiff's invective, hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited."). This circuit does not permit plaintiffs to bring assertions hoping to be able to justify them later. See e.g. *Pam v. City of Michigan City*, 2012 WL 4060970 (N.D. 2012)(Lee, J); *Johnson v. Anderson*, 2011 WL 43220 (S.D. Ind., Jan. 3 2011)(McKinney, J); *Sivard v. Pulaski County*, 17 F.3d 185 (7th Cir. 1994); *McTigue v. City of Chicago*, 60 F.3d 381, 383 (7th Cir. 1995) .

To determine whether a complaint is sufficiently pled, the Supreme Court uses a two pronged approach by assessing (1) whether there is sufficient factual matter to state a claim of relief and (2) whether the claim is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-679 (2009).

> a. <u>Plaintiff's Complaint does not meet the first prong of sufficiency pleading since Plaintiff did not recite sufficient factual matter to hold the Sheriff liable under a *Monell* styled action</u>.

When assessing the first part of sufficiency pleading, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* at 678. After deciding which allegations are factually well-plead,

7

the Court next determines (prong 2) whether they plausibly give rise to an entitlement to relief. *Id.* at 679.

Plaintiff charged a number of "fact based" assertions against the Sheriff, which were enumerated above, including the absence of a standard crime scene investigation and final report, inaccurate ballistics testing, and a failure to properly preserve evidence. (Complaint ¶¶ 44-50). While some of these allegations may be construed as legal conclusions or a mixture of facts and law, these allegations insufficiently plead a *Monell* claim because the allegations are limited – as Plaintiff admits- to an isolated occurrence affecting this Plaintiff and were not the result of a policy or widespread practice of the Sheriff.[10] (Doc. 23, p.11).  By its very essence, a *Monell* styled claim must contain allegations that the unconstitutional conduct was the result of a policy, custom, or widespread practice.   Unconstitutional policies or customs can take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.[11] *Garrison v. Burke*, 165 F.3d at 571–72 (7th Cir. 1999).

Plaintiff's Complaint fails to state a claim under prong one of the *Monell* analysis in that Plaintiff does not identify an express policy or widespread practice of the Sheriff that lead to any transgression allegedly committed by the Sheriff.  See Complaint ¶74.   Like the Court's analysis of the allegations in *Iqbal*, the fact based allegations brought against the Sheriff are formulaic

---

[10] Plaintiff's Response states, "[p]laintiff is aware she has not alleged any other person who was a victim of the [Sheriff's] alleged unconstitutional policies similar to this situation, however discovery in this matter is still ongoing and Plaintiff requested additional time to conduct the depositions….Nonetheless, Plaintiff maintains an ongoing custom, policy, or practice that harms" citizens. (Doc. 23, p.11).

[11] Since Plaintiff is bringing only a Monell claim against the Sheriff t is unclear why his Response contains the unsupported assertion that "deputy sheriff were arguably involved in the communications and orders utilized in the apprehension. (Doc 23, p.14).  Not only is that assertion not in the Complaint but it does nothing to advance his *Monell* claim.

and thread bare recitals.  For instance, Plaintiff asserts that an unnamed protocol and procedure was violated when Sheriff agreed to investigate.  It is unclear whether that protocol or procedure even exists, much less who governs the protocol or procedure, and how the Sheriff may be governed by it, if at all.  Similarly, Plaintiff alleges a policy and practice of NPD and the Sheriff that facilitated "the type of misconduct at issue" by failing to "adequately investigate, punish, and discipline prior instances of similar misconduct." (Complaint ¶74b).   Yet, Plaintiff admits to not being aware of any similar misconduct and only hopes he could unearth such misconduct through further discovery.  As presented in the Sheriff's initiating brief, Plaintiff's allegations are formulaic, conclusory, and devoid of any repeated prior violations or regular practices.  Plaintiff's Response admits as much when he confirms that he did not include other similarly situated victims or policies and instead relies on further discovery and experts to assist in this venture. (Doc. 23, p. 11).

     Moreover, Plaintiff does not identify a single policy or practice of the Sheriff with any specificity, much less one that was the moving force behind the NPD shooting or the manner and method in which the Sheriff investigated the Bell shooting.  Thus, Plaintiff's allegations seeking entity liability are nothing more than thread bare recitals and conclusory statements with insufficient factual matter to be sustainable under *Twombly* and *Iqbal*.

     In *McTigue v. City of Chicago* an employee sued the City for alleged due process violations related to his being fired.  The complaint incorporated a paragraph stating,

> [S]ince at least 1990, employees, including Plaintiff, who are disciplined by the City of Chicago, have not received fair and impartial hearings ... [R]ather, pursuant to a policy, practice and well established custom of the City of Chicago . . .its Hearing Officers have been biased and partial against the employees and in favor of the City.

McTigue also provided statistics relative to the record of employees bringing their cases before the board revealing more losses by employees. In reviewing the sufficiency of the allegations, the Court reasoned that the Complaint failed to allege with particularity how the statistics reflect an improper City policy. Despite plaintiff's argument, there was no basis to measure the statistics and assume bias. Further, the statistics failed to convey that a policy or custom existed to satisfy "even the loose requirements of notice pleading." Thus, the Seventh Circuit affirmed the District Court's dismissal of the Complaint.

Furthermore, in *Taylor v. City of Chicago*, 1997 WL 51445 (N.D. Ill 1997), plaintiff sued city police officers who broke her arm during the course of her arrest alleging that the City had a custom or policy of failing to supervise and train its officers to effect an arrest without inflicting bodily harm. In analyzing the sufficiency of the complaint, the court recognized that while case law suggests that § 1983 complaints need not conform to heightened pleading requirements, plaintiffs must do more than plead an empty allegation of municipal policy. See *Doherty v. City of Chicago*, 75 F.3d 318 (7th Cir. 1996). Taylor's complaint alleged nothing beyond her own arrest to support an allegation that such action constituted a policy of depriving persons of constitutional rights as the complaint alleges. In analyzing the sufficiency of the complaint, the court acknowledged the difficulty of identifying facts prior to discovery, however, held that if upon "reasonable inquiry plaintiffs still have no reason to conclude the existence of an unconstitutional municipal policy, they should not use the discovery process as a fishing expedition during which they cast their nets of broad and conclusory allegations in the hopes of catching a trace of such a policy." Taylor, at *3. The court further reasoned that Taylor's complaint was very similar to the one in *McTigue*, where the Seventh Circuit affirmed dismissal of the complaint, because the allegations regarding the incident were the only allegations on

which each plaintiff based a clam of unconstitutional policy.  Similar to the complaints filed in *McTigue* and *Taylor*, Plaintiff's Complaint fails to identify or describe a Sheriff's policy or practice that caused him to suffer a deprivation.  Instead, Plaintiff's Complaint refers to an NPD policy that cannot plausibly be binding on the Sheriff and otherwise makes bald assertions of the existence of policy and procedure that is too conclusory and unsupported by any factual averments that would preclude dismissal.  Moreover, Plaintiff's complaint is absent any other circumstances wherein a citizen's constitutional rights were similarly violated and relies solely on his incident, namely being shot by NPD officers, and the existence of one investigation (into his being shot) to assert a claim for unconstitutional policy or practice.

For the reasons stated above and relied upon in *McTigue* and *Taylor*, all of Plaintiff's federal claims against the Sheriff should be dismissed.

     b. <u>Plaintiff's Complaint does not meet the second prong of sufficiency pleading inasmuch as Plaintiff's assertions are not plausible.</u>

Under the second prong of the sufficiency analysis, plausibility is a context-specific task requiring the court to draw on judicial experience and common sense.  *Twombly*, 550 U.S. at 556.   Even if the Court construed the factual allegations as sufficient to state a claim under prong one, the Complaint fails under prong two because the allegations against the Sheriff are implausible and not entitled to assumptions of truth as would be necessary to support Plaintiff's claim that the Sheriff's action caused him to suffer a deprivation of a federal right.  The Complaint alleges that only NPD officers shot him (Complaint ¶¶33-34, 38-42) yet Complaint ¶54 is a generalized assertion of damages against all Defendants, which is implausible since there is no assertion that Sheriff's officers used force on Bell or otherwise participated in apprehending him. Similarly, Count III (Complaint ¶74) and Count IX (Complaint ¶¶105-113) are replete with implausible assertions against the Sheriff including assertions that the Sheriff

physically harmed the Plaintiff, assertions that the Sheriff had a duty to train NPD officers, and assertions that the Sheriff had a duty to follow NPD policy and procedure.  Plaintiff cannot rely on facts that are implausible and, therefore, not well-plead to attempt to state a claim for relief against a party.  Moreover, Count IV is unsustainable because Plaintiff fails to allege that the conspiracy deprived Plaintiff of any specific right and §1983 does not provide an independent claim for relief under a conspiracy theory. [12]   For these reasons, the federal claims against the Sheriff should be dismissed, including Counts III, IV, and IX.

   *3.  Plaintiff's Federal Claims Against the Sheriff Lack Proximate Cause to His Harm.*

The Complaint fails to allege how the Sheriff's supposed improper investigation, including the preservation and/or deletion of video, harmed him, devalued his claim against NPD, or otherwise caused damages.  Instead, Plaintiff lumps his allegations of wrongdoing against the NPD and Sheriff into generalized assertions that these Defendants caused him to suffer "severe and permanent injuries requiring surgical intervention and medical care," affected "employment opportunities" and was "damaged." (Complaint ¶¶54-56, 81, 115).  Consequently, Plaintiff does not allege that the post-shooting investigation by the Sheriff caused him any specific harm for which he could assert a deprivation under 42 U.S.C. §1983.

  **B.  Defendant Is Immune From State Law Liability.**

   1.  *Plaintiff's Notice of Tort Claim Is Deficient.*

Count X of Plaintiff's Complaint asserts a claim of negligence against the City and Sheriff.  Count X generally ascribes the negligence to the (a) manner in which Plaintiff was

---

[12] Count IV is entitled "Conspiracy under 42 U.S.C. 1983" yet conspiracy is not an independent basis for liability under §1983.  Moreover, Plaintiff did not plead sufficient plausible facts to countenance a conspiracy claim under any legal theory.  Further problematic is that Plaintiff's Response again relies on unpled facts when he attempts to support Count IV by arguing that there was a meeting of the minds when an NPD officer called and appointed the Sheriff's Department as the investigator while unidentified deputy sheriffs were still at the scene. (Doc. 23, p15.)  Plaintiff did not plead these facts in his Complaint.

seized and (b) the post shooting preservation of evidence and investigation. (Complaint ¶117). Plaintiff asserts that he provided a notice of tort claim, which substantially complied with the statutory notice requirements of I.C. 34-13-3-8, and attached his notice as Exhibit A.[13] Plaintiff recognizes that the purpose of the notice statute includes informing the political subdivision officials with reasonable certainty of the tort and surrounding circumstances so that the political subdivision may investigate, determine its potential liability, and prepare a defense to the claim. (Doc. 23, p.17).

Here, the notice was deficient in several respects. First, the notice did not provide any information or factual circumstances concerning how the Sheriff or his officers may have engaged in wrongdoing. The notice contains no facts to alert the Sheriff that his officers allegedly participated in an unlawful seizure of the Plaintiff. Second, the notice is barren of any assertion that the Sheriff's investigation, including the claim that evidence was not properly preserved, was improper, violated state law, or otherwise constituted a tort. Third, the notice failed to indicate that Plaintiff intended to pursue a claim against the Sheriff arising from any acts or omissions of his officers. In fact, rather than put the Sheriff on notice of potential claims and an intention to file suit so that the Sheriff could investigate Plaintiff's claims, determine his potential liability, and prepare a defense, the notice actually serves to de-emphasize the purpose of the notice. See Plf Exh. A (Doc. 23-1) where the notice states:

> Because Taylor Bell nor his counsel have a copy of the police and/or sheriff's report and follow-up investigation to determine all agencies involved in the crisis intervention and the shooting, and it is reported that the Hamilton County Sheriff's office performed an investigation into this incident, the Noblesville Police Department, Hamilton County Sheriff's Department, and other interested parties are receiving notice of this Tort Claim.

---

[13] The Notice is dated November 7, 2013, but could have been filed or amended up until *at least* January 20, 2014, since parties have 180 days to file their notice under the Act.

In other words, in conjunction with the absence of information to put the Sheriff on notice of alleged wrongdoing and an intention to file suit against him, the above notice language conveys that Plaintiff may be attempting to give notice, albeit deficient notice under the Act, to public entities who may or may not have any exposure to tort liability. Thus, without a clear expression of the nature of the potential claim and an intention to file suit against each entity served, one entity may construe this language as an intention not to bring a claim against all entities. Thus, the above language from Plaintiff's notice serves to frustrate, if not contradict, the purpose of the notice provisions of the Act.

"Substantial compliance with the ITCA, while a fact-sensitive test, is a question of law." *Martin v. Indiana*, 2015 WL 4899008, *22 (N.D. Ind. 2015) citing to *Collier v. Prater*, 544 N.E.2d 497, 499 (Ind. 1989). Once a defendant raises failure to comply with the ITCA's notice requirements, the burden shifts to the plaintiff to prove compliance. *Id.*; see also *Alexander v. City of South Bend*, 256 F. Supp.2d 865, 976 (N.D. Ind. 2003). "The crucial consideration is whether the notice supplied by the claimant of his intent to take legal action contains sufficient information for the city to ascertain the full nature of the claim against it so that it can determine its liability and prepare a defense." *Collier,* 544 N.E.2d at 500. But "mere actual knowledge of an occurrence, even when coupled with routine investigation, does not constitute substantial compliance." *Ind. State Highway Comm'n v. Morris*, 528 N.E.2d 468, 470.

In his Response, Plaintiff cites *Schoettmer v. Wright*, 992 N.E.2d 702 (Ind. 2013), a case which focuses on the theory of equitable estoppel, a defense that may relieve a plaintiff of his duty to submit a notice in instances inapplicable to the facts of this case.[14] While Plaintiff does

---

[14] *Schoettmer* involved a driver injured in an automobile accident, entered into settlement discussions without being represented by an attorney and after his unsuccessful attempts, hired an attorney one year later at which

14

not actually assert an equitable estoppel argument, the Response hints at the issue by indicating that Plaintiff did not have the police report, sheriff's report, or other information at the time he filed the Tort Claim Notice, but that "counsel was investigating the claim regarding all allegations." [Doc. 23, p. 17]  It is unclear what "claim" Plaintiff's counsel was investigating, but it is clear that Plaintiff's counsel did not provide sufficient information to advise the Sheriff so that he could assess his liability.

Moreover, the bulk of Plaintiff's state law claims against the Sheriff center on the alleged improper investigation and handling of evidence.  It is unclear when Plaintiff first learned of purported errors with the investigation, but arguably it was sometime after November 7, 2013, but before he filed his first Complaint in state court on February 13, 2014.[15]  Regardless of when Plaintiff's counsel first knew or should have known of its claims against the Sheriff he failed to provide a notice of tort claim to the Sheriff that explained the nature of those claims and an intention to file suit.  Furthermore, despite Plaintiff's attempt to excuse his lack of knowledge of his claims against the Sheriff when he served the notice, Indiana's courts have "been hesitant to allow estoppel in cases where the party claiming to have been ignorant of the facts had *access* to the correct information." *Mills v. Hausmann-McNally, S.C.*, 55 F. Supp. 3d 1128, 1137 (S.D. Ind. 2014), citing to *Story Bed & Breakfast,* 819 N.E.2d at 67 (emphasis added); *Cablevision of Chi. v. Colby Cable Corp.,* 417 N.E.2d 348, 355 (Ind.Ct.App.1981).  Nowhere in Plaintiff's Response does he claim a lack of access to the records or an inability to submit a public access to records request under Indiana law.

---

time the lawyer filed suit on the driver's behalf then finding out that the driver was a government employee. The driver cited various arguments to excuse his failure to comply with the notice requirements including waiver, estoppel, substantial compliance and agency.  *Id*.

[15] Action initiated against the Sheriff under Cause No. 29D02-1402-CT-1331. Plaintiff filed his Second Amended Complaint against the Sheriff on June 11, 2014.

The very purpose of the notice provisions of the Act is to prevent government defendants from having to guess at their liability and being left unable to develop their defenses, which is precisely what the Sheriff was left doing given the deficient notice served by Plaintiff.  Plaintiff's failure to substantially comply with the notice provisions of the Tort Claims Act serves to bar his state law tort claim(s) against the Sheriff.

### 2. *The Sheriff is entitled to law enforcement immunity.*

Even if Plaintiff had complied with the notice requirements under the ITCA, the state law claim of negligence must be dismissed based upon law enforcement immunity.  Law enforcement immunity provides that government employees are not liable while acting within the scope of their employment if they are adopting or enforcing a law, unless the enforcement constitutes false arrest or false imprisonment.  Ind. Code 34-13-3-3(8).  In this case, Sheriff's officers were acting pursuant to their authority when they established a perimeter around the area and investigated the shooting.  In his Response Brief, Plaintiff for the first time contends that the Sheriff had a duty to protect Plaintiff prior to the shooting.  This claim is not alleged in Count X of the Complaint and its exclusion is the subject of Sheriff's Motion to Strike.  Even if Plaintiff had asserted that the Sheriff was negligent before the shooting, he is entitled to immunity under the ITCA.

Plaintiff's argument that the Sheriff is not immune based upon a failure to use reasonable care before or after the shooting is misplaced.  Indiana courts have consistently applied Indiana Code § 34-13-3-3(8) to find governmental immunity in cases where police officers have failed to enforce a law and such failure is alleged to have caused bodily injury or death. *See Savieo*, 824 N.E.2d at 1276; *City of Hammond v. Reffitt*, 789 N.E.2d 998, 1003 (Ind. Ct. App. 2003), *trans.*

*denied; Severson v. Board of Trustees of Purdue University*, 777 N.E.2d 1181, 1202 (Ind. Ct. App. 2002); *Minks v. Pina*, 709 N.E.2d 379, 383 (Ind. Ct. App. 1999); *see also King v. Northeast Security*, 790 N.E.2d 474, 484 (Ind. 2003), *reh'g denied*.  In *Savieo*, the personal representative of the decedent's estate sued the City of New Haven because its police failed to apprehend the decedent after receiving a report that he threatened to kill himself.  The court recognized that Indiana Code § 12-26-4-1 allows a law enforcement officer to apprehend an individual when the law enforcement officer has reasonable grounds to believe that the individual is mentally ill, dangerous, and in immediate need of hospitalization.  The court reasoned that the exercise of discretion to detain individuals is the very essence of law enforcement and would be covered under the immunity provision of Indiana Code § 34-13-3-3(8). *Id.* The court went on to hold that police officers and other governmental employers are "entitled to immunity if a loss results from the decision to apprehend (or not to apprehend) a mentally ill and dangerous person."

Regardless of how Plaintiff has attempted to frame his negligence claims against the Sheriff- whether the claims include negligence in failing to protect the Plaintiff for the action of the NPD officer or in the post shooting investigation, the Sheriff was exercising police powers in the enforcement of state laws that vest the Sheriff with this authority; thus, immunity should be granted to the Sheriff by dismissing the state law claim(s) brought against him.

### IV.  CONCLUSION

For the above stated reasons, Plaintiff's Third Amended Complaint against the Sheriff of Hamilton County should be dismissed since it fails to state a claim upon which relief can be granted.

Respectfully submitted,

**COOTS, HENKE & WHEELER, P.C.**

/s/Matthew L. Hinkle
Matthew L. Hinkle, # 19396-29
Erika N. Sylvester, #30058-64
*Attorneys for Hamilton County Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that on the **26th day of October, 2015**, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operations of the Court's electronic filing system. Parties may access this filing through the Court's system.

Thomas E. Hastings
Robert B. Turner
Jeff D. Oliphant
**THE HASTINGS LAW FIRM**
thastings@lawindianapolis.com
rbtatty@aol.com
joliphant@hastingslegal.com
*Attorneys for Plaintiff*

Kirk A. Horn
**MANDEL HORN MCGRATH & REYNOLDS, P.C.**
khorn@mhmrlaw.com
*Attorney for The City of Noblesville,*
*Neal Rosenberg, James Aloisio,*
*Craig Denison, and Lieutenant David Thoma*

Darren J. Murphy
**ASSISTANT CITY OF NOBLESVILLE ATTORNEY**
dmurphy@ori.net
*Attorney for The City of Noblesville,*
*Neal Rosenberg, James Aloisio,*
*Craig Denison, and Lieutenant David Thoma*

/s/Matthew L. Hinkle

L:\Alternative Service Concepts\Bell v. Hamilton Co. (17120.015)\Pleadings\Sheriff's Department's Motion to Dismiss\Reply to Plaintiff's Response to Sheriff's MTD - Brief.docx

18