UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHELLA  WILDE as guardian of TAYLOR BELL, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:15-cv-01051-JMS-TAB |
| vs. | ) ) | |
| NEAL  ROSENBERG individually and as servant or agent of the Noblesville Police Department, JAMES  ALOISIO individually and as servant or agent of the Noblesville Police Department, CRAIG  DENISON individually and as servant or agent of the Noblesville Police Department, LIEUTENANT DAVID  THOMA individually and as servant or agent of the Noblesville Police Department, THE CITY OF NOBLESVILLE, THE HAMILTON COUNTY SHERIFF, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER**

Plaintiff Shella Wilde brings this action as Guardian of Taylor Bell.[1]  Presently pending before the Court are two motions: Defendant The Hamilton County Sheriff's (the "Sheriff") Motion to Dismiss, [Filing No. 13], and the Sheriff's Motion to Strike portions of Plaintiff's Response in Opposition to the Motion to Dismiss, [Filing No. 26].  For the reasons that follow, the Court grants the Sheriff's Motion to Dismiss, [Filing No. 13], and denies as moot the Sheriff's Motion to Strike, [Filing No. 26].

---

[1] The Court will refer to Ms. Wilde and Mr. Bell collectively as "Plaintiff," except when detailing the factual allegations about Mr. Bell's attempted suicide-by-cop that underlie this lawsuit.

# I.
## APPLICABLE STANDARD

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. Pro. 8(a)(2)).  "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Factual allegations in the complaint are accepted as true, but allegations that are legal conclusions are insufficient to survive the motion. *Adams*, 742 F.3d at 728.  A complaint that pleads facts that are merely consistent with a defendant's liability "'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  In other words, to survive dismissal, a plaintiff "must plead some facts that suggest a right to relief that is beyond the speculative level." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

# II.
## BACKGROUND

The following background is set forth from the relevant allegations in Plaintiff's Third Amended Complaint, which must be taken as true at this stage of the litigation, as necessary to address the pending motions.  [Filing No. 1-1 at 345-68.]

The Sheriff is a political subdivision of the State of Indiana and is in command and control of the Sheriff's Office located in Hamilton County, Indiana. [Filing No. 1-1 at 347.] The Sheriff is distinct from Defendant Noblesville Police Department ("NPD"), which is controlled by Defendant City of Noblesville (the "City"). [Filing No. 1-1 at 346-47.]

On July 20, 2013, Mr. Bell "was a mentally unstable adult that suffered from suicidal tendencies." [Filing No. 1-1 at 348.] Mr. Bell sought suicidal treatment from Aspire Crisis Hot Line and advised the counselor with whom he spoke "that he intended to commit suicide by cop by pointing a gun at police officers with no intention of shooting the gun." [Filing No. 1-1 at 348.] Mr. Bell had obtained a Beretta Air Gun to carry out his plan. [Filing No. 1-1 at 348.] After the telephone call, the counselor with whom Mr. Bell spoke reported Mr. Bell's intentions to 911 and conveyed that Mr. Bell did not intend to harm any police officers. [Filing No. 1-1 at 348.] The counselor requested that NPD perform a welfare check on Mr. Bell. [Filing No. 1-1 at 348.]

NPD Officers were dispatched to Mr. Bell's home to perform a welfare check. [Filing No. 1-1 at 348.] Lieutenant David Thoma, an NPD crisis negotiator, located Mr. Bell via cellphone and began speaking with him. [Filing No. 1-1 at 349.] Mr. Bell was in a parking lot adjacent to Riverview Hospital. [Filing No. 1-1 at 349.] "Other officers from NPD and the Sheriff arrived on the scene. Some assumed felony stop positions behind their vehicles in front of Bell, and others hid behind buildings." [Filing No. 1-1 at 349.]

While speaking with Lieutenant Thoma, Mr. Bell held the Beretta Air Gun by the barrel in his right hand and his cellphone in his left hand. [Filing No. 1-1 at 349.] Lieutenant Thoma requested that Mr. Bell drop what he was holding and walk toward Lieutenant Thoma. [Filing No. 1-1 at 349.] Mr. Bell "was shot by two bean bag rounds fired by NPD Officers" and "then shot by multiple NPD Taser guns." [Filing No. 1-1 at 349.] Mr. Bell began to run to the back of the

parking lot, and Lieutenant Thoma "gave an order to NPD Officers to 'go get him.'" [Filing No. 1-1 at 349.] Lieutenant Thoma joined the pursuit in his vehicle, and Mr. Bell "ultimately surrendered to the NPD Officers with his hands up." [Filing No. 1-1 at 349.] Lieutenant Thoma again ordered Mr. Bell to drop what he was holding, and Mr. Bell was "again shot by multiple Tasers." [Filing No. 1-1 at 349.] Defendant Neal Rosenberg, an NPD Officer, then shot Mr. Bell in the upper abdominal/chest area. [Filing No. 1-1 at 347, Filing No. 1-1 at 350.] Defendants James Aloisio and Craig Denison, who were both NPD Officers, subsequently fired their weapons and Mr. Bell was shot in the back of his left thigh. [Filing No. 1-1 at 347; Filing No. 1-1 at 350.]

Mr. Bell alleges that after the shooting, "there was no standard crime scene investigation conducted." [Filing No. 1-1 at 350.] He contends that NPD and the City "engaged the Sheriff to conduct the investigation of the crime scene and the officer involved shooting, instead of utilizing an outside agency/investigator not involved in the incident per standard protocol." [Filing No. 1-1 at 350.] Mr. Bell specifically alleges that the Sheriff failed to do the following things: accurately conduct laboratory testing on bullet shell casings, weapons used in the shooting, and other evidence in the matter; properly investigate the shootings regarding the knowledge of on-scene officers that Mr. Bell's weapon was an air gun; complete a final comprehensive report or summary regarding its investigation and findings per standard procedure and protocol; properly preserve all dash-cam footage and officer/dispatch communications for investigation; and that the Sheriff intentionally manipulated or deleted dash cam footage obtained of the shooting. [Filing No. 1-1 at 350.]

Plaintiff does not dispute that there is no evidence that Mr. Bell was arrested, incarcerated, or prosecuted as a result of the incident at issue. [Filing No. 14 at 10; Filing No. 23.] Plaintiff also does not dispute that the Sheriff is not the NPD Officers' employer, does not exercise control

over them, and does not have the ability to hire, fire, or discipline them.  [Filing No. 14 at 11; Filing No. 23.]

Plaintiff initially filed this action in state court.  [Filing No. 1.]  Plaintiff was granted leave to amend the complaint in June 2015, and alleged federal claims in that pleading for the first time. [Filing No. 1 (referencing Filing No. 1-1 at 345-66).]  Defendants removed the case to federal court.  [Filing No. 1.]

The Third Amended Complaint asserts the following claims against the Sheriff: a *Monell* claim (Count III); a § 1983 conspiracy claim (Count IV); a claim for inadequate training, supervision, and discipline (Count IX); and a negligence claim (Count X).  [Filing No. 1-1 at 353-66.]  The Sheriff has moved to dismiss all of those claims, [Filing No. 13], and that motion is now fully briefed and ready for the Court's decision.  The Sheriff has also filed a Motion to Strike certain portions of Plaintiff's response brief, contending that those portions go beyond the scope of the allegations in the Third Amended Complaint.  [Filing No. 26.]  The Court will address each motion in turn.

### III.
#### DISCUSSION

### A.  Motion to Strike

The Sheriff asks this Court to strike portions of Plaintiff's response brief that the Sheriff contends go beyond the scope of the allegations in the Third Amended Complaint.  [Filing No. 26.]  The Sheriff alleges that the response brief "imagines a scene of the police action shooting that is quite dissimilar from the one portrayed by the Complaint."  [Filing No. 27 at 1.] Specifically, the Sheriff emphasizes that nowhere in the Third Amended Complaint does Plaintiff allege that the Sheriff's officers were present when the shooting occurred, but the response brief accuses those officers of being "involved in the convergence surrounding Bell in the parking lot."

[Filing No. 27 at 3 (citing Filing No. 23 at 4).] The Sheriff also claims that nowhere in the Third Amended Complaint does it specify how the Sheriff allegedly failed to investigate, despite the response brief listing the Sheriff's alleged failures to get another entity to investigate the shooting, the absence or deletion of dash-cam video footage, and the failure to update case notes. [Filing No. 27 at 4-5 (identifying portions of Filing No. 23).]

In response, Plaintiff concedes that "the Third Amended Complaint does not verbatim state the facts as asserted in the Response Brief." [Filing No. 30 at 1.] Plaintiff disagrees that the identified portions of the brief must be stricken, however, emphasizing the notice-pleading standard in federal court. [Filing No. 30 at 2-3.] Plaintiff argues that the allegations in the Third Amended Complaint are specific enough to put the Sheriff on notice of the claims at issue. [Filing No. 30 at 3-6.] Plaintiff also points out that a motion to dismiss may be converted into a motion for summary judgment by the Court if it finds it appropriate to do so. [Filing No. 30 at 7.]

In reply, the Sheriff maintains that even a "comprehensive reading" of Plaintiff's Third Amended Complaint does not give rise to any indication that Plaintiff pled that the Sheriff was directly involved in the alleged "converging" around Mr. Bell before he was shot. [Filing No. 33 at 2-4.] The Sheriff urges the Court not to convert its motion into a motion for summary judgment. [Filing No. 33 at 5-6.]

It is within the Court's discretion "to handle the case as a straightforward motion to dismiss, rather than converting it to a motion under Rule 56." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). Converting a motion, however, requires the Court to "provide each party notice and an opportunity to submit affidavits or other additional forms of proof." *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 479 (7th Cir. 2002) ("This requirement of a reasonable opportunity to respond is mandatory, not discretionary."). Although Plaintiff attached a tort claim notice to

6

the response brief opposing the motion to dismiss in response to the Sheriff's arguments that Plaintiff failed to serve such a notice, [Filing No. 23-1], the existence of a tort claim notice does not bear on the parties' arguments regarding the sufficiency of the allegations in the operative complaint.  Moreover, it is unnecessary for this Court to consider or analyze the contents of the attached tort claim notice to resolve the pending motion to dismiss.  Thus, the Court will not convert the pending motion to dismiss into one for summary judgment.

The Sheriff correctly notes that a plaintiff cannot amend his complaint through his response brief.  *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (referencing "the axiomatic rule that a plaintiff may not amend his complaint in his response brief").  The Court disagrees, however, that the identified portions of Plaintiff's response brief must be stricken under the circumstances presented herein.  While the parties may not agree on exactly when the Sheriff's officers arrived at the scene, Plaintiff does not contend that the Sheriff's officers fired their weapons or shot Mr. Bell.  [Filing No. 23 at 5 (Plaintiff's response brief, confirming that "Hamilton County Sheriff's officers did not fire their weapons or shoot Bell").]  Plaintiff does not assert an excessive force claim against the Sheriff. [Filing No. 1-1 at 351 (not asserting § 1983 excessive force claim against the Sheriff).]  Instead, all of Plaintiff's claims against the Sheriff stem from Plaintiff's allegations concerning the Sheriff's alleged failures related to the subsequent investigation into the shooting of Mr. Bell. [Filing No. 1-1 at 353-66.]  But as the Court will detail at length below, Plaintiff's claims against the Sheriff fail as a matter of law.  Thus, regardless of whether the Court assumes for the sake of the argument that the Sheriff's officers were part of the group that converged on Mr. Bell and further assumes that the Sheriff failed to subsequently investigate the matter in the ways Plaintiff

alleges in the response brief, Plaintiff's claims against the Sheriff still must be dismissed.  Thus, the Court denies as moot the Sheriff's Motion to Strike.  [Filing No. 26.]

**B.  Motion to Dismiss**

*1) Federal Claims (Counts III, IV, and IX)*

The Third Amended Complaint asserts the following federal claims against the Sheriff: a *Monell* claim (Count III); a § 1983 conspiracy claim (Count IV); and a claim for inadequate training, supervision, and discipline (Count IX).[2]  [Filing No. 1-1 at 353-66.]

The Sheriff contends that Plaintiff's federal claims against it should be dismissed as a matter of law.  The Sheriff emphasizes that because none of its officers shot Mr. Bell, there are no allegations that the Sheriff caused Mr. Bell to suffer a constitutional deprivation, as is required to support a 42 U.S.C. § 1983 claim.  [Filing No. 14 at 6-8.]  The Sheriff emphasizes that § 1983 does not authorize vicarious liability and contends that Plaintiff's allegedly boilerplate allegations of liability are insufficient to survive a motion to dismiss.  [Filing No. 14 at 8-9.]  To the extent that Plaintiff's claims rely on alleged inadequate or incomplete investigation, the Sheriff contends that those claims are not actionable.  [Filing No. 14 at 10.]  The Sheriff emphasizes that it is undisputed that it does not control or employ the NPD Officers.  [Filing No. 14 at 11.]  Finally, the Sheriff points out that conspiracy is not an independent basis of liability under §1983.  [Filing No. 14 at 16.]

---

[2] It is not clear from the face of the Third Amended Complaint whether Plaintiff brings the claim for inadequate training, supervision, and discipline (Count IX) under state or federal law.  [Filing No. 1-1 at 361-63.]  Plaintiff responds to the Sheriff's arguments regarding Count IX, however, by classifying that claim as a federal claim.  [Filing No. 23 at 7-12.]  Because Plaintiff is the master to the complaint, *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002), the Court will only address Count IX as a federal claim.

In response, Plaintiff agrees that § 1983 "does not itself create substantive rights but provides a means for vindicating federal rights conferred elsewhere." [Filing No. 23 at 8.] Plaintiff acknowledges that to succeed on the federal claims, it must prove that Mr. Bell's constitutional rights were violated and that the Sheriff's action or inaction must have caused Mr. Bell's injuries. [Filing No. 23 at 9.]   Plaintiff argues that this burden was met at the notice-pleading stage of litigation. [Filing No. 23 at 10.]  Throughout its response brief, Plaintiff repeatedly points to Mr. Bell's alleged "right to a fair investigation of the shooting." [Filing No. 23 at 10; Filing No. 23 at 14 ("subsequent to the shooting, the [Sheriff] broke protocol and procedures in agreeing to investigate the shooting when it was directly involved in the scene of the crime. The [Sheriff] also failed to properly investigate the scene of the shooting, make a full report, and question officers . . . ."; Filing No. 23 at 16 (responding in support of conspiracy claim by arguing that the "Sheriff failed to conduct a proper investigation . . . .").].

In reply, the Sheriff points out that "Plaintiff does not identify the source of this supposed right [to a fair investigation] or explain how the right to a fair investigation is protected under federal law." [Filing No. 28 at 5.]  The Sheriff points to Plaintiff's admission that he is unaware of any other person subjected to the allegedly unconstitutional policy, and emphasizes that the only policy cited as support is an NPD policy, not a Sheriff's policy. [Filing No. 26 at 6-8.]  The Sheriff contends that Plaintiff's allegedly conclusory, boilerplate allegations are not plausible and cannot support Plaintiff's federal claims.  [Filing No. 28 at 8-11.]  Finally, the Sheriff points out that Plaintiff has not alleged proximate cause because he cites injuries from the shooting as his damages, but it is undisputed that NPD Officers over which the Sheriff had no control shot Mr. Bell.  [Filing No. 28 at 12.]

The Sheriff does not dispute that it is a municipal entity for purposes of 42 U.S.C. § 1983. A municipal entity is responsible under § 1983 when the execution of its policy or custom—whether by its lawmakers or by those whose "edicts or acts may fairly be said to represent official policy"—is the cause of the plaintiff's injury. *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 727 (7th Cir. 2014), *cert. denied* (citing *Monell v. Dept. of Soc. Servs. of N.Y.C.,* 436 U.S. 658, 694 (1978)). There are only three ways in which a municipality can be held liable under § 1983: "(1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *League of Women Voters*, 757 F.3d at 727 (citing *Estate of Sims*, 506 F.3d at 515).

 "To establish municipal liability, a plaintiff must show the existence of an official policy or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012); *see also King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014) (to succeed, plaintiff must show that he suffered a deprivation of a federal right as a result of the policy at issue, and that it was the proximate cause of his injury). This is because § 1983 "does not create substantive rights; rather, it is a means for vindicating federal rights conferred elsewhere." *Padula v. Leimbach*, 656 F.3d 595, 600 (7th Cir. 2011).

After analyzing the parties' arguments regarding the viability of Plaintiff's federal claims against the Sheriff, the Court concludes that they fail for at least two reasons. First, Plaintiff has not plausibly pled that the injury of which he complains was proximately caused by the Sheriff. In the Third Amended Complaint, Plaintiff exclusively focuses on his injuries that were a result of

the shooting.  [Filing No. 1-1 at 351 (alleging that as a result of the shooting, Mr. Bell "sustained severe and permanent injuries requiring surgical intervention and medical care and treatment" and "incurred the inability to seek employment opportunities").]  But it is undisputed that Mr. Bell was shot by NPD Officers over which the Sheriff had no control.  [Filing No. 14 at 11; Filing No. 23 (not disputing assertion).]  It is likewise undisputed that there is no evidence that Mr. Bell was arrested, incarcerated, or prosecuted as a result of the events surrounding the shooting.  [Filing No. 14 at 10; Filing No. 23 (not disputing assertion).]  Thus, Plaintiff has not pled a plausible basis for how the Sheriff's actions or inactions were the proximate cause of any injuries or damages Mr. Bell sustained.

Second, even assuming that Plaintiff had plausibly pled proximate cause, Plaintiff's § 1983 claims against the Sheriff require Plaintiff to identify a federal constitutional right of which the Sheriff deprived Mr. Bell.  *See Padula*, 656 F.3d at 600 (emphasizing that § 1983 "does not create substantive rights; rather, it is a means for vindicating federal rights conferred elsewhere"); *see also Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("[C]onspiracy is not an independent basis of liability in § 1983 actions.").[3]  Because it is undisputed that the Sheriff did not have control over the NPD Officers that shot Mr. Bell, Plaintiff maintains throughout the response brief that the Sheriff violated Mr. Bell's alleged "right to a fair investigation of the shooting."  [*See, e.g.*, Filing No. 23 at 10.]  Plaintiff cites no authority supporting that alleged right, perhaps because the Seventh Circuit Court of Appeals recently confirmed that an individual "does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of

---

[3] Additionally, to sufficiently state a federal claim for civil conspiracy, a plaintiff must "allege[] a pattern of harassment by several officers over a period of months." *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012).  Plaintiff's operative complaint makes no such allegations.  [Filing No. 1-1 at 356-57 (federal civil conspiracy claim).]

satisfaction." *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) (citing *DeShaney v. Winnebago Cty. Dept. of Soc. Servs.*, 489 U.S. 189, 196 (1989) (holding that the Constitution "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.")).  "[M]ere inactivity by police does not give rise to a constitutional claim," and "the plaintiff must also show that the police's actions harmed his ability to obtain appropriate relief." *Rossi*, 790 F.3d at 735-36.  Plaintiff makes no allegation regarding how the Sheriff's investigatory actions harmed his ability to obtain any appropriate relief, likely because there is no evidence that Mr. Bell was arrested, incarcerated, or prosecuted following the shooting.  Because Plaintiff has not identified a federal constitutional right of which the Sheriff allegedly deprived Mr. Bell, Plaintiff cannot maintain the § 1983 claims it asserts against the Sheriff.

To the extent that Plaintiff tries to circumvent this by making a general "failure to train" claim against the Sheriff, it also fails.  While it is possible that inadequacy in training can serve as a basis for liability under § 1983 where the failure to train "amounts to deliberate indifference to the citizens the officers encounter," *Matthews v. City of E. St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012), Plaintiff's operative complaint alleges that the Sheriff (and NPD and the City, who are not at issue in the pending motion) allegedly failed to train four identified NPD Officers about an NPD policy for "handling situations of emotionally disturbed persons attempting suicide by cop." [Filing No. 1-1 at 361-62.]  Because Plaintiff does not dispute that the Sheriff had no control over the NPD Officers involved in the shooting and had no authority to fire or discipline them, [Filing no. 14 at 11; Filing No. 23], Plaintiff cannot maintain a failure to train claim against the Sheriff under these circumstances.

In sum, there is a logical disconnect between Plaintiff's allegations regarding the Sheriff's involvement in the incident with Mr. Bell, the damages Mr. Bell sustained, and the federal claims Plaintiff makes against the Sheriff. For all of the reason detailed herein, Plaintiff's federal claims against the Sheriff must be dismissed.

### 2) State Law Claim (Count X)

Plaintiff asserts a state law negligence claim against the Sheriff. [Filing No. 1-1 at 363-64].] Plaintiff asserts that the Sheriff (and the City and NPD, who are not parties to the pending motion) were negligent by failing to protect and preserve evidence following the shooting of Mr. Bell, failing to establish a plan of action to seize Mr. Bell in a safe manner, and failing to have a proper investigation conducted by an independent agency after the shooting. [Filing No. 1-1 at 363-64.]

The Sheriff argues that Plaintiff's negligence claim against it should be dismissed because of the law enforcement immunity provision of the Indiana Tort Claims Act ("ITCA"). [Filing No. 14 at 18-19.] The Sheriff emphasizes that Plaintiff does not allege that the Sheriff battered or falsely arrested Mr. Bell, which are the two exceptions to the law enforcement immunity provision.[4] [Filing No. 14 at 19.]

---

[4] The Sheriff also argues that Plaintiff's negligence claim must be dismissed because Plaintiff failed to provide notice of the claim as required by the ITCA before filing this lawsuit. [Filing No. 14 at 19-20.] Plaintiff disagrees with that argument and attaches a tort claim notice to its response. [Filing No. 23 at 16-17 (referencing Filing No. 23-1).] The Sheriff replies, challenging the sufficiency of the contents of that notice. [Filing No. 28 at 12-16.] Because the Court concludes that the Sheriff is protected by the law enforcement immunity provision of the ITCA regardless of the sufficiency of Plaintiff's tort claim notice, the Court will not address the "fact-sensitive test" required to address the sufficiency of such a notice. *See Collier v. Prater*, 544 N.E.2d 497, 499 (Ind. 1989) (noting that although substantial compliance with the ITCA notice provision is a question of law, it requires "a fact-sensitive determination").

In response, Plaintiff contends that the Sheriff is not immune under the ITCA because the law enforcement immunity provision "does not grant immunity to government agencies or employees from liability for the breach of the duty of reasonable care, [and] this would extend to the [Sheriff's] negligent investigation." [Filing No. 23 at 18.]

In reply, the Sheriff argues that the law enforcement provision of the ITCA protects government employees acting within the scope of their employment if they are adopting or enforcing a law. [Filing No. 28 at 16.] The Sheriff emphasizes that its officers were acting within their authority when responding to and investigating the scene, and Plaintiff does not allege otherwise. [Filing No. 28 at 16.]

The ITCA "allows suits against governmental entities for torts committed by their employees but grants immunity under the specific circumstances." *Mangold ex rel. Mangold v. Indiana Dep't of Natural Res.*, 756 N.E.2d 970, 975 (Ind. 2001) (citing Ind. Code § 34-13-3-3). Whether the ITCA applies is a question of law, and the party seeking immunity bears the burden on the issue. *Mangold*, 756 N.E.2d at 975. "As a statute in derogation of the common law, the ITCA is to be construed narrowly." *Id.*; *Snyder v. Smith*, 7 F. Supp. 3d 842, 874 (S.D. Ind. 2014)

Indiana Code § 34-13-3-3(8) of the ITCA provides that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment." Indiana Code § 34-13-3-3(10) provides immunity for a governmental entity from "the act or omission of anyone other than the governmental entity or the governmental entity's employee." "'The purpose of immunity is to ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over

14

decisions made within the scope of their employment.'" *Savieo v. City of New Haven*, 824 N.E.2d 1272, 1275 (Ind. Ct. App. 2005) (quoting *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003)).

Under the circumstances alleged by Plaintiff, the Court finds that Indiana Code § 34-13-3-3(10) provides immunity to the Sheriff for the NPD Officers' actions that resulted in Mr. Bell being shot, given that it is undisputed that the Sheriff did not employ or control those officers. To the extent that Plaintiff's negligence claim is based on the Sheriff's allegedly deficient investigation after the shooting, the Court agrees with the Sheriff that Plaintiff's Third Amended Complaint does not allege that the Sheriff or its officers were acting outside the scope of their employment during the relevant time period. [*See* Filing No. 1-1 at 363-64.] Thus, Plaintiff's negligence claim is barred by the law enforcement immunity provision of Indiana Code § 34-13-3-3(8). [Filing No. 1-1 at 363-64.] Given that Plaintiff does not allege that Mr. Bell was arrested or imprisoned following the shooting, and it is undisputed that no evidence would support such an allegation, the law enforcement immunity exceptions for false arrest and false imprisonment cannot apply. I.C. § 34-13-3-3(8). For these reasons, the Court concludes that the Sheriff is entitled to immunity from Plaintiff's negligence claim pursuant to the ITCA.

## IV.
### CONCLUSION

For the reasons stated herein, the Court **GRANTS** the Sheriff's Motion to Dismiss, [Filing No. 13], and **DENIES AS MOOT** the Sheriff's Motion to Strike, [Filing No. 26]. No final judgment shall issue at this time. The Court directs the Clerk to docket Plaintiff's Third Amended Complaint, [Filing No. 1-1 at 345-68], as a separate docket entry so that it can be more easily located and referenced in future filings.

Date: February 3, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Electronic Distribution via CM/ECF:**

Jeff D. Oliphant
joliphant@lawindianapolis.com

Matthew L. Hinkle
COOTS HENKE & WHEELER
mhinkle@chwlaw.com

Erika L. Sylvester
COOTS HENKE & WHEELER, P.C.
esylvester@chwlaw.com

Darren J. Murphy
HOWARD & ASSOCIATES
dmurphy@ori.net

Kirk A. Horn
MANDEL HORN MCGRATH & REYNOLDS, P.C.
khorn@mhmrlaw.com

Robert B. Turner
THE HASTINGS LAW FIRM
rbtatty@aol.com

Thomas Edward Hastings
THE HASTINGS LAW FIRM
thastings@lawindianapolis.com

Tyler D. Helmond
VOYLES ZAHN & PAUL
thelmond@vzplaw.com